**NO. 22-13893**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

VERA COOPER,
NICOLE HANSELL,
NEILL FRANKLIN,

*Plaintiffs – Appellants,*

v.

ATTORNEY GENERAL OF THE UNITED STATES,
UNITED STATES OF AMERICA,
DIRECTOR OF BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,

*Defendants – Appellees.*
_____/

On Appeal from the United States District Court
for the Northern District of Florida
Case No. 4:22-cv-00164-AW-MAF

## APPELLANTS' OPENING BRIEF

William Dean Hall, III
Jordane P. Wong
Dean Mead & Dunbar
106 East College Avenue, Ste. 1200
Tallahassee, Florida 32301
850-999-4100
*Counsel for Appellants*

Adam J. Komisar
Komisar Spicola, P.A.
101 North Gadsden Street
Tallahassee, FL 32301
850-328-4447
*Counsel for Appellant*
*Nicole Hansell*

No. 22-13893, *Cooper v. Attorney General of the United States*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellants, Vera Cooper, Nicole Hansell and Neill Franklin, through their undersigned counsel, pursuant to 11th Cir. R. 26.1-1, hereby certify that the following persons or entities have an interest in the outcome of this case:

Boynton, Brian – Trial Counsel for Defendants/Appellees; Principal Deputy Assistant Attorney General.

Caminez & Yeary, P.A. – Counsel for Plaintiff/Appellant Franklin

Cooper, Vera – Plaintiff/Appellant.

Dean, Mead, Egerton, Bloodworth, Capouano & Bozart, P.A. – Counsel for Plaintiffs/Appellants.

Dettelbach, Steven – Defendant/Appellee, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives.

Farby, Leslie - Trial Counsel for Defendants/Appellees; Assistant Branch Director for the United States Department of Justice.

Franklin, Neill – Plaintiff/Appellant.

Fried, Nicole – Former Plaintiff/Appellant, in her official capacity.

Garland, Merrick – Defendant/Appellee, in his official capacity; Attorney General of the United States.

Hall, William – Counsel for Plaintiffs/Appellants.

Hansell, Nicole – Plaintiff/Appellant.

Hazel, Steven – Counsel for Defendants/Appellees; United States Department of Justice.

Komisar, Adam – Counsel for Plaintiff/Appellant Hansell.

Komisar Spicola, P.A. – Counsel for Plaintiff/Appellant Hansell.

Newman, Jeremy – Trial Counsel for Defendants/Appellees.

Restaino, Gary – Former Defendant/Appellee, in his previous official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives.

Russell, Daniel – Counsel for Plaintiffs/Appellants.

Simpson, Wilton – Former Plaintiff/Appellant, in his official capacity.

Winsor, Hon. Allen – United States District Judge.

Wong, Jordane - Counsel for Plaintiffs/Appellants.

Wright, Abby – Counsel for Defendants/Appellees; Assistant Director, United States Department of Justice Civil Division, Appellate Staff.

Yeary, Ryan – Counsel for Plaintiff/Appellant Franklin.

## STATEMENT REGARDING ORAL ARGUMENT

The Appellants respectfully request oral argument in this matter pursuant to 11th Cir. R. 28-1(c). This matter relates to the alleged violation of a core constitutional right. It also presents a unique application of facts to what is still a new and emerging legal standard for Second Amendment challenges. Beyond just the question of whether state law-compliant medical marijuana users may be constitutionally disarmed within the history and tradition of this right, questions such as what constitutes a sufficiently analogous historical regulation pursuant to *New York State Rifle & Pistol Association, Inc. v. Bruen,* 142 U.S. 2111 (2022) remain unsettled. The Appellants believe that oral argument would assist the Court in its consideration of these important issues.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ...............................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................... I

TABLE OF CONTENTS.........................................................................II

TABLE OF AUTHORITIES ................................................................. IV

JURISDICTIONAL STATEMENT ....................................................VIII

STATEMENT OF THE ISSUES..............................................................1

STATEMENT OF THE CASE...................................................................2

SUMMARY OF THE ARGUMENT .......................................................20

ARGUMENT ..........................................................................................23

   I.      THE ORDER OF DISMISSAL SHOULD BE REVERSED. .................23

     A.   The Appellees did not meet their burden of showing that disarming state
        law-compliant medical marijuana users comports with the history and
        tradition of the Second Amendment.........................................................23

       1.  State law-compliant medical marijuana users are not felons, felon
        equivalents, or violent offenders ....................................................24

       2.  The Appellees have shown no historical support for disarming
        misdemeanants...................................................................................32

       3.  There is less historical support for disarming state law-compliant medical
        marijuana users than there would be for traditional misdemeanants.............34

4.   Historical regulations disarming those under the influence of a substance or addicts are not analogous to the Challenged Laws. ...................................38

B.    The District Court did not construe all well-pled allegations in the Amended Complaint in the light most favorable to the Appellants.........44

CONCLUSION ........................................................................................................46

CERTIFICATE OF COMPLIANCE.......................................................................47

CERTIFICATE OF SERVICE ...............................................................................48

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Binderup v. Attorney General,*
    836 F.3d 336 (3d Cir. 2016) ............................................................ 15, 27, 32

*Daniel v. City of Tampa,*
    38 F.3d 546 (11th Cir. 1994) ..........................................................34

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)................................................................... passim

*Folajtar v. Att'y Gen. of the U.S.,*
    980 F.3d 897 (3d Cir. 2020) ............................................................ 15, 27, 32

*Gonzalez v. Raich*,
    545 U.S. 1, 14 (2005)........................................................................7

*Gunter v. Advanced Correctional Healthcare, Inc.,*
    844 Fed. Appx. 189 (11th Cir. 2021) ............................................45

*Hamilton v. Pallozzi,*
    848 F.3d 614 (4th Cir. 2017) ..........................................................15

*Holland v. Carnival Corporation*,
    50 F.4th 1088 (11th Cir. 2022) ......................................................20

*Kanter v. Barr,*
    919 F.3d 437 (7th Cir. 2019) .......................................................... 26, 44

*Medina v. Sessions,*
    279 F. Supp. 3d 281 (D.C. Cir. 2017) ..........................................15

*MSP Recovery Claims, Series LLC v. Metropolitan General Insurance Company*,
    40 F.4th 1295 (11th Cir. 2022) ......................................................45

*NE Patients Group v. United Cannabis Patients and Caregivers of Maine*,
    45 F.4th 542 (1st Cir. 2022) ..........................................................35

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
    142 U.S. 2111 (2022)............................................................... passim

*Range v. Attorney General*,
    53 F.4th 262 (3d Cir. 2022) ................................................................ passim

*Sessions v. Dimaya*,
    138 U.S. 1204 (2018)..................................................................................34

*Standing Akimbo, LLC v. U.S.*,
    141 U.S. 2236 (2021) (Thomas, C., respecting the denial of certiorari). 8, 24,
    35

*United States v. Bilodeau*,
    24 F.4th 705 (1st Cir. 2022) ...................................................................9, 40

*United States v. Booker*,
    644 F.3d 12 (1st Cir. 2011)........................................................................30

*United States v. Carter*,
    750 F.3d 462 (4th Cir. 2014) ....................................................................17

*United States v. Jackson*,
    2022 WL 3582504 (W.D. Okla., Aug. 19, 2022)................................. 30, 33

*United States v. Jimenez-Shilon*,
    34 F.4th 1042 (11th Cir. 2022 ..................................................................2, 19

*United States v. Lewis*,
    2023 WL 187582 (W.D. Okla., Jan. 13, 2023) ...............................................6

*United States v. McIntosh*,
    833 F.3d 1163 (9th Cir. 2016) ....................................................................9

*United States v. Melendrez-Machado*,
    2022 WL 17684319, (W.D. Texas, Oct. 18, 2022) ........................................7

*United States v. Nutter*,
    2022 WL 3718518 (S.D. W. Va., Aug. 29, 2022)........................................30

*United States v. Price*,
    2022 WL 6968457 (S.D. W. Va., Oct. 12, 2022)................................................29

*United States v. Rozier*,
    598 F.3d 768 (11th Cir. 2010) ...................................................................24

*United States v. White*,
593 F.3d 1199 (11th Cir. 2010) ....................................................30

*United States v. Yancey*,
621 F.3d 681(7th Cir. 2010) ................................................. passim

## Statutes

18 U.S.C § 921(a)(20)(b) ...........................................................25

18 U.S.C § 922(g)(3)........................................................ 9, 10, 28

21 U.S.C. § 802 ........................................................................9

21 U.S.C. § 812(c) ...................................................................7

21 U.S.C. § 841(a) ...................................................................7

21 U.S.C. § 844(a) ...................................................................7

28 U.S.C. § 1291 .................................................................. viii

28 U.S.C. § 1331 .................................................................. viii

Consolidated Appropriations Act of 2022, H.R. 2471, 117 Cong. § 531........ passim

Consolidated Appropriations Act of 2023, H.R. 2617, 117 Cong. § 531.................9

Florida Statute § 381.986(1)(l) ...................................................8

Florida Statute § 381.986(12)(c)..................................................8

Florida Statute § 893.13(3) ......................................................7

## Other Authorities

C. Sunstein, *On Analogical Reasoning*, 106 HARV. L. REV. 741 (1993) .................5

Carlton F.W. Larson, *Four Exceptions in Search of A Theory: District of Columbia v. Heller and Judicial Ipse Dixit*, 60 HASTINGS L.J. 1371 (2009) ........................39

**Regulations**

27 C.F.R. § 478.11 (1968) ..................................................................... 10, 22, 40, 41

OMB No. 1140-0020 ................................................................... 10, 11, 12

**Constitutional Provisions**

Florida Constitution Article X, § 29(a)(1) ................................................................8

United States Constitution Amendment II ..................................................... passim

United States Constitution, Article III, § 2 .............................................................v

## JURISDICTIONAL STATEMENT

The District Court filed its Order of Dismissal (Doc. 21, "Order") on November 4, 2022. This was a final order that disposed of all claims before the District Court. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291. The Appellants timely filed their Notice of Appeal on November 16, 2022.

Further, this matter presents a federal question within the District Court and this Court's jurisdiction. *See* U.S. Const., Art. III, Sec. 2; 28 U.S.C. § 1331. Specifically, the Appellants allege that certain federal statutes and regulations violate the Second Amendment to the United States Constitution as applied to marijuana users who comply with their state medical marijuana laws.

## STATEMENT OF THE ISSUES

1.      Whether the Appellees met their burden of showing that preventing marijuana users who comply with their state medical marijuana programs from possessing or purchasing a firearm comports with the history and tradition of the Second Amendment?

2.      Whether the District Court construed all well-pled allegations in the Amended Complaint for Declaratory and Injunctive Relief (Doc. 12, "Amended Complaint") in the light most favorable to the Appellants in the Order?

## STATEMENT OF THE CASE

### Constitutionality of firearm regulations

The Second Amendment to the United States Constitution states, "a well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." This "codifie[s] a pre-existing right." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). Specifically, it guarantees "the individual right to possess and carry weapons in case of confrontation." *Id.* This is not a "novel principle," but rather a "guarantee…which we inherited from our English ancestors." *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022).

However, the right to bear arms is not unlimited. *Heller*, 554 U.S. at 595. The United States Supreme Court has stated that its Second Amendment jurisprudence "should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill" or other restrictions. *Id.* at 626-627. *Bruen* reiterated that the Second Amendment "surely elevates above all interests the right of law-abiding, responsible citizens" to possess arms for self-defense. 142 U.S. at 2131 *citing Heller*, 554 U.S. at 635. *Bruen* makes repeated reference to the rights of such "law-abiding citizens." 142 U.S. at 2122, 2125, 2131, 2133-2134, 2135 n. 8, 2138 n. 9, 2150, 2156

However, other than *Heller*'s discussion of presumptively-lawful regulations, such as those disarming "felons," neither *Heller* nor *Bruen* defines "law-abiding citizens." *Heller* and *Bruen* also do not include any discussion of which types of actions or crimes would place an individual within this class. The same is true for what would render a person "mentally ill" or equivalent to it. *Bruen* simply noted that the petitioners in that matter were "ordinary, law-abiding, adult citizens" and that they were clearly "part of 'the people'" to whom the Second Amendment applies. 142 U.S. at 2134.

When considering any modern law seeking to disarm a class of persons, *Bruen* made clear that the sole consideration in determining its constitutionality is whether the government can:

> "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear firearms."

142 U.S. at 2127.

*Bruen* noted that, as "constitutional rights are enshrined with the scope they were understood to have when the people adopted them," certain time periods will provide the most relevant historical traditions in this area. *Id.* at 2137 *citing Heller*, 554 U.S. at 634-635. The Second Amendment was ratified in 1791, meaning a regulation which "long predates" that time "may not illuminate the scope of the right

if linguistic or legal conventions changed" after that time.[1] *Id.* Similarly, courts must be careful not to give laws passed significantly post-enactment "more weight than [they] can rightly bear." *Id.*

When a modern law "addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation" dealing with that issue is "relevant evidence" that the challenged regulation violates the Second Amendment. *Id.* at 2131. For example, *Heller* dealt with a complete ban on handguns in the District of Columbia. 554 U.S. at 628. This was intended to address "firearm violence in densely populated communities." *Id.*; *see also Bruen*, 142 U.S. at 2131. The lack of an equivalent restriction during the relevant historical periods, when that same general concern existed, contributed to that law being deemed unconstitutional. *Heller*, 554 U.S. at 631.

Although direct comparisons such as the one in *Heller* may be straightforward, *Bruen* acknowledged that many Second Amendment challenges will implicate "unprecedented societal concerns or dramatic technological changes."

---

[1] The Fourteenth Amendment was ratified in 1868, and *Bruen* leaves open the question of whether that is in fact the relevant time period in which firearms laws and regulations would have the most historical import. 142 U.S. at 2136, 2138. The Appellants do not believe the Court needs to consider or resolve this question in its disposition of this case because, from both the regulations the Appellees rely upon and the historical citations from pertinent case law, it does not appear that there was a relevant distinction in the regulations that are argued to be analogous and pertinent to the Appellants.

142 U.S. at 2132. Determining whether a current law fits within the history and tradition of the Second Amendment in such novel cases "will often involve reasoning by analogy." *Id.* at 2132. Such reasoning does not require the government to present a "historical twin" for each modern gun regulation. *Id.* at 2133. Rather, it must show a "well-established and representative analogue" for such a law. *Id.*

As "[e]verything is similar in infinite ways to everything else," such current regulations dealing with new or unique issues will only be deemed analogous to historical laws if they are "relevantly similar." *Id.* at 2133-2134 *citing* C. Sunstein, *On Analogical Reasoning*, 106 HARV. L. REV. 741, 773-774 (1993). *Bruen* pointed to two metrics which could show that two laws are "relevantly similar:" "how and why" they burden an individual's Second Amendment right. *Id.* at 2132-2133. Specifically, courts should consider whether modern laws impose a "comparable burden" to their historical counterparts on the right to bear arms and whether that burden is "comparably justified" when undertaking this analysis. *Id.*

*Bruen* provides an example of this form of analysis. It cites to the discussion in *Heller* of historical laws precluding firearms from "sensitive places such as schools and government buildings." *Id. Bruen* then considered whether a modern law declaring "the island of Manhattan a 'sensitive place,'" due to its significant population and the fact that it is "protected generally by the New York City Police Department," could be deemed analogous to those historical regulations. *Id.*

The Court determined that this attempted analogy did not pass muster, as it would define "'sensitive places' far too broadly." *Id.* at 2133-2134. Although being a place of general congregation and having some level of law enforcement protection may be elements of a "sensitive place," not every crowded location with a police presence would fit that definition. *Id.* Holding otherwise would essentially "eviscerate the general right to publicly carry arms for self-defense…" in major cities. *Id.* Accordingly, in order to establish a modern analogue to historical "sensitive places" restrictions, the government would need to show that its current determination of what constitutes such a place is relevantly similar in scope and purpose to the historical understanding.

In implementing *Bruen*, some district courts have begun to grapple with whether the requirement for "distinctly similar" regulations relating to long standing problems is more taxing than the "relevantly similar" standard for new or novel issues. *See United States v. Lewis*, 2023 WL 187582 at *2-3 (W.D. Okla., Jan. 13, 2023) ("Although the *Bruen* majority opinion is not unmistakably clear on this point, the court concludes…that it does articulate two standards for assessment of the government's proffered historical analogues…one thing that is not clear from the *Bruen* majority opinion…is just how, in practice, the difference between the two standards might make a difference in outcomes in other cases in the lower courts."); *See also United States v. Melendez-Machado*, 2022 WL 17684319, at *3 (W.D.

Tex., Oct. 18, 2022), *United States v. Connelly*, 2023 WL 17829158 AT *3 (W.D. Tex., Jan. 13, 2023). It does not appear that any circuit court has considered this question.

### Federal law regarding marijuana and state medical marijuana programs

Marijuana use and possession is federally illegal. 21 U.S.C. §§ 812(b)(1)(A); 21 U.S.C. §§ 812(c); 21 U.S.C. §§ 841(a); 21 U.S.C. § 844(a)). First-time marijuana possession or use is classified as a federal misdemeanor pursuant to this law, as it is punishable by incarceration of up to a year. U.S.C. § 844(a). Possession of less than 20 grams of marijuana is also a misdemeanor pursuant to Florida law. § 893.13(3), Fla. Stat.

The United States made marijuana use criminal in 1970. Doc. 12, No. ℙ 5 *citing Gonzalez v. Raich*, 545 U.S. 1, 14 (2005). There does not appear to be any dispute that, as cited in the Amended Complaint, marijuana use was legal before that time. Doc. 12, ℙ 3, 4. For significant periods running from the Seventeenth Century through the early-to-mid Twentieth Century, marijuana was researched, recommended, and prescribed as a medication in America and England. *Id.*, ℙ 47-50.

Despite this current federal prohibition, a majority of states now permit at least certain residents to use marijuana for medicinal purposes. Doc. ℙ 11 *citing Standing Akimbo, LLC v. U.S.*, 141 U.S. 2236, 2237 (2021) (Thomas, C., respecting the denial

of certiorari); ¶ 51-52. Florida is one of those states.[2] *Id.*; *see also* Art. X, § 29(a)(1), Fla. Const. Florida law defines a "qualifying patient" who is eligible to participate in the state's medical marijuana program as "a person who has been diagnosed to have a debilitating medical condition, who has a physician certification, and a valid qualifying patient identification card…" Art. X, § 29(a)(1), Fla. Const.; *see also* § 381.986(1)(l), Fla. Stat.. Such qualifying patients must comply with several legal requirements, such as not using marijuana in public, not cultivating marijuana, purchasing any marijuana only through approved channels, and being prepared to present their patient identification to law enforcement upon request. See §§ 381.986(12)(c), 381.986(12)(d), 381.986(12)(e) Fla. Stat.

Rather than enforce its marijuana ban and shut down such state medical marijuana programs, the federal government has done the opposite. As Justice Clarence Thomas noted in *Standing Akimbo*, "in every fiscal year since 2015, Congress has prohibited the Department of Justice from 'spending funds to prevent states' implementation of their own medical marijuana laws." 141 U.S. at 2237; Doc. 12, ¶ 12. It has done so through a budget rider commonly referred to as the

---

[2] As the Order correctly notes, the Supremacy Clause of the United States Constitution prohibits Florida or other states from legalizing any activity which federal law prohibits. Doc. 21, p. 1-2 *citing United States v. McIntosh*, 833 F.3d 1163, 1179 n. 5 (9th Cir. 2016). Accordingly, the arguments and citations herein concede the general, federal illegality of even state law-compliant medical marijuana use.

"Rohrabacher-Farr Amendment." *Id.* The version of the Rohrabacher-Farr Amendment at the time the Amended Complaint was filed made up section 531 of the Consolidated Appropriations Act of 2022. Doc. 12-1, p. 3-4. Since that time, this provision has been included once again as section 531 of the Consolidated Appropriations Act of 2023.[3] The Appellees agree that this amendment precludes the Department, at least currently, from expending funds to arrest or prosecute individuals who comply with their state medical marijuana laws. Doc. 33 (transcript), p. 16-17*; see also United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016) and *U.S. v. Bilodeau*, 24 F.4th 705, 714 (1st Cir. 2022).

### Federal law regarding marijuana and firearms

Federal law precludes marijuana users, including medical marijuana patients, from purchasing or possessing firearms. Specifically, section 922(d)(3) of the Federal Criminal Code makes it unlawful to "sell or otherwise dispose of any firearm or ammunition to any person" who is an "unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802))." Section 922(g)(3) of the Federal Criminal Code prohibits any such "unlawful user" from possessing or receiving "any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The Bureau of

---

[3] *See* H.R. 2617, p. 103, https://www.congress.gov/117/bills/hr2617/BILLS-117hr2617enr.pdf.

Alcohol, Tobacco, Firearms, and Explosives ("ATF") within the United States Department of Justice ("Department") has adopted regulations which specifically define "controlled substance" as including marijuana. 27 C.F.R. § 478.11 (1968).

ATF has also promulgated a definition of "unlawful user of or addicted to any controlled substance," as discussed in those statutes. It states that such unlawful use "is not limited to the use of drugs on a particular day, or within a matter of days or weeks before." 27 C.F.R. § 478.11 (1968). Instead, a person will be deemed an unlawful user of a controlled substance if their use "has occurred recently enough to indicate that the individual is actively engaged in such conduct." *Id.* This may be true "even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm." *Id.* Additionally, this definition states that the standard for unlawful use may be met in the event a person has tested positive for the use of a controlled substance within the last year. *Id.*

As a means of enforcing these laws and regulations, ATF has promulgated Form OMB No. 1140-0020 ("Form").[4] Doc. 12-2. Any person seeking to purchase a firearm from a licensed seller must complete this form in order to complete their transaction. Question 21(e)[5] on the Form at the time the Amended Complaint was

---

[4] Sections 922(d)(3) and 922(g)(3) of the Federal Criminal Code, 27 C.F.R. § 478.11, and Form OMB No. 1140-0020 shall be referred to collectively as "Challenged Laws."

[5] The Form has since been amended and this question and associated warning now

filed asked "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?" *Id.*, p. 3. Beneath that question, the Form stated:

> "Warning: the use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medical or recreational purposes in the state where you reside."

*Id.*

### The Amended Complaint

The Appellants filed the Amended Complaint on July 8, 2022. Doc. 12. Through that filing, the Appellants sought a declaration that the Challenged Laws violate the Second Amendment as applied to marijuana users who comply with their state medical marijuana laws. *Id.*, ¶ 110-126. Appellants also sought an injunction preventing the enforcement of the Challenged Laws against such medical marijuana patients. *Id.*, ¶ 127-134. Additionally, the Appellants alleged that the Challenged Laws violate the Rohrabacher-Farr Amendment. *Id.*, ¶ 135-146. This appeal, however, relates only to the counts in the Amended Complaint alleging a Second Amendment violation.

Appellants Cooper and Hansell are Florida residents and qualifying medical marijuana patients, pursuant to Florida law. *Id.*, ¶ 29, 32. They both participate in

---

appear under 21(g). *See* https://www.atf.gov/firearms/docs/4473-part-1-firearms-transaction-record-over-counter-atf-form-53009/download.

the state's medical marijuana program and comply with the laws relating to it. *Id.,* 29, 32, 106, 111, 136. Cooper and Hansell use medical marijuana in reliance upon not only state law, but also the Rohrabacher-Farr Amendment's current protection against criminal arrest or prosecution relating to it. *Id.,* ¶ 29, 32, 122. Nothing in the Amended Complaint states or implies that Cooper or Hansell are under the influence of marijuana at all times or during the course of their everyday affairs. *Id.* Further, it does not state or imply that they have lost any level of control over their use of marijuana or that their medical marijuana use has in any way impacted their general ability to regulate their behavior. *Id.* There is also nothing in the record indicating that Cooper or Hansell have any prior marijuana convictions.

Cooper and Hansell both wish to exercise their Second Amendment right to possess a firearm.  *Id.,* ¶ 30, 31, 33, 34. They attempted to purchase firearms but, due solely to their medical marijuana use and the prohibitions in the Challenged Laws, those attempts were denied. *Id.,* ¶ 31, 34. Specifically, Cooper and Hansell answered "yes" to the question on the Form asking whether they were an "unlawful user" of marijuana. *Id.*

Appellant Franklin is a Florida resident and the owner of a firearm. *Id.,* ¶ 25. Franklin has been deemed medically eligible for Florida's medical marijuana program, and he wishes to use medical marijuana in compliance with relevant state

laws. *Id.,* ⁋ 36, 37. However, he will not do so on the sole basis that the Challenged Laws would require him to dispose of his firearms. *Id.,* ⁋ 37.

Cooper and Hansell[6] argued that they are "law-abiding" citizens, as discussed in *Heller* and *Bruen*. *Id.*, ⁋ 91-93. As stated earlier, they conceded that marijuana is federally illegal. However, as pled, they only use medical marijuana "in reliance upon the protections that Florida's medical marijuana laws and the Rohrabacher-Farr amendment afford them." *Id.*, ⁋ 92. Whereas participants in the illicit marijuana market do so with clear notice that it may subject them to arrest and prosecution, Cooper and Hansell currently face no such repercussions. *Id.* They contended that this makes them distinctly and relevantly dissimilar to anyone who has historically been deemed non-law abiding. *Id.*, ⁋ 93.

Alternatively, the Appellants alleged that Cooper and Hansell are, at worst, akin to federal misdemeanants. *Id.*, ⁋ 99, 101. They argued that neither historical regulations nor current laws have disarmed those who commit low-level criminal offenses such as first-time marijuana possession. *Id.*, ⁋ 100. One of the sole exceptions to this would be the misdemeanor crime of domestic violence, which multiple federal courts have deemed equivalent to felony conduct. *See* Doc. 15, p. 23 n. 6.

---

[6] Franklin, as pled, does not currently use marijuana. Accordingly, the majority of the references herein relating to state law-compliant medical marijuana users generally will be to Cooper and Hansell.

Further, the Appellants asserted that there did not appear to be any historical laws precluding the possession of firearms based upon the general use of any substance. *Id.,* ⁋ 53. Rather, relevant laws dealing with the use of intoxicants focused on prohibiting firearm possession while a person was under their influence. *Id.,* ⁋ 54; *see also* Doc. 14, p. 25-27. Dispossessing an individual of their right to bear arms for generally consuming such a substance, they contended, is not distinctly similar to such historical laws. *See* Doc. 15, p. 20.

**Motion to Dismiss**

The Appellees moved to dismiss the Amended Complaint on August 8, 2022. *See* Doc. 13. In support of this motion, the Appellees argued that all Appellants' Second Amendment allegations failed as a matter of law. The Appellees cited to two "closely related" historical traditions in firearm regulation that they deemed analogous to the Challenged Laws. Doc. 14, p. 2. Those were the traditions of disarming those who "are not 'law-abiding citizens'" and "those whose behavior or status would render their firearms possession a danger to themselves of the community." *Id.*

The Appellees asserted that Cooper and Hansell are not "law-abiding, responsible citizens," as discussed in *Bruen* and *Heller. See* Doc. 14, p. 16-17, 22-23, 27-28; Doc. 16, p. 6. They argued that engaging in "criminal activity" (i.e., the use of marijuana) provides a historical basis for disarmament. *Id.,* p. 21-22. Some

courts and scholars, the Appellees noted, have concluded that citizens are expected to be "virtuous," in a civil sense, thus permitting the government to disarm "criminals." *See* Doc. 14, p. 33. The Appellants cited case law noting that "felons and felon equivalents" were the types of individuals historically deemed unvirtuous in this manner. *See* Doc. 15, p. 22-23. *See Folajtar v. Att'y Gen. of the U.S.,* 980 F.3d 897, 902 (3d Cir. 2020) *citing Binderup v. Attorney General,* 836 F.3d 336, 348 (3d Cir. 2016); *Hamilton v. Pallozzi,* 848 F.3d 614, 625 n. 9 (4th Cir. 2017); *Medina v. Sessions,* 279 F. Supp. 3d 281, 290 (D.C. Cir. 2017). However, the Appellees countered that this class is broader than that, as it would also include drug users, children, and the mentally ill. *See* Doc. 16, p. 10-11.

The Appellees also analogized marijuana possession to domestic violence. Doc. 16, p. 9-10. The Appellees assert that they are distinctly or relevantly similar offenses because both involve "criminal activity that renders firearms possession dangerous, albeit for different reasons." *Id.* Those differing reasons are said to be that domestic abuse shows a "propensity for violence," while marijuana use has "impairing effects." *Id.* The Appellees made clear that, for purposes of their motion, they were not advancing any argument that marijuana possession is a crime associated with violence. Doc. 16, p. 12-13.

The Appellees contended further that the Rohrabacher-Farr Amendment does not render medical marijuana use any more "law abiding" than purely illegal drug

use. *Id.*, p. 18-20. This budget rider provides only a "time-limited bar" on the Department's ability to expend funds to prosecute individuals who participate in their state's medical marijuana programs. *Id.*, p. 18; Doc. 16, p. 6-7. Therefore, the Appellees asserted that the Rohrabacher-Farr Amendment does not bless or protect Cooper or Hansell's behavior in any way.

Beyond the issue of criminality, the Appellees argued that Cooper and Hansell fit within the class of persons that have been historically deemed too "dangerous" to wield firearms. Doc. 14, p. 23-25. They cited to regulations disarming Catholics, Native Americans, those refusing to swear allegiance to their government, the mentally ill, and panhandlers as relevantly analogous laws. *Id.* The Appellees did not offer any express argument, however, regarding why or how Cooper and Hansell are distinctly or relevantly similar to those groups. Instead, they asserted that they need not show that Cooper or Hansell "fit squarely" in such a group because *Bruen* requires only a "historical analogue," not a "historical twin." Doc. 16, p. 7-8.

The Appellees' "dangerousness" argument relies mostly on the previously-discussed historical regulations barring intoxicated persons from possessing firearms. Doc. 14, p. 25-27. These laws prohibited individuals who were under the influence of intoxicating substances from wielding such weapons. *Id.* Some also applied to "habitual drug users or alcoholics." *Id.* These laws, the Appellees

reasoned, support disarming state law-compliant marijuana users even when such persons are not under the influence of that substance. Doc. 16, p. 11-12.

The Appellees argued further that, if Cooper or Hansell are ever allowed to possess a firearm, then they "will have access to that firearm when [they use] marijuana." *Id.* This presents, the Appellees contend, a "danger" that Cooper or Hansell would "fail to exercise sound judgment and use the firearm while impaired." *Id.* Further, the Appellees assert that medical marijuana use has or may have impaired Cooper and Hansell's "mental function," which could lead them to exhibit "irrational and unpredictable behavior." Doc. 16, p. 13 *citing United States v. Carter*, 750 F.3d 462, 469-470 (4th Cir. 2014).

### Order of Dismissal

Following an oral argument on October 12, 2022, the District Court entered the Order on November 4, 2022. *See* Doc. 21. The District Court concluded that "medical marijuana users violate current federal law in the same way that recreational marijuana users do." *Id.*, p. 15. It found that the Rohrabacher-Farr Amendment does not change this dynamic as it "at best precludes prosecution now; it does not forever bless [Appellants'] actions." *Id.*, p. 13.

The District Court agreed that the purpose of the Rohrabacher-Farr Amendment "presumably is to help (to some extent) people like the [Appellants]." *Id*, p. 13-14, n. 8. However, it deemed this "legally irrelevant," as marijuana use

remains federally illegal. *Id.* The District Court found that the Appellants sought "too much specificity" in stating that any historical analogues must account for the current, conflicting nature of federal marijuana regulation. *Id.*, p. 14. This, the District Court reasoned, would require the sort of "historical twin" that *Bruen* deemed unnecessary. *Id.*

The District Court noted that some "unlawful conduct" which could be deemed "trivial," such as jaywalking or speeding, may not justify disarmament. *Id.,* p. 15. But, the District Court deemed it unnecessary to explore those "outer bounds" because "Congress considered marijuana possession serious business." *Id.* The District Court then recited the misdemeanor penalties associated with first-time marijuana possession. *Id.* It determined further that disarmament was comparably justified in this situation because "the burden only exists as long as marijuana users fit the regulation's definition of 'current user.'" *Id.*, p. 16. The District Court added that, if the Appellants were correct that only felon-equivalents could be disarmed, then recreational or purely illicit marijuana users may also fall outside of historical firearm regulations. *Id.*, p. 14-15.

The District Court also accepted the Appellees' argument that Cooper and Hansell are analogous to those historically viewed as too dangerous to possess a firearm. *Id.*, p. 18. The District Court deemed the previously-discussed historical regulations disarming intoxicated persons relevantly similar to the general

preclusion in the Challenged Laws. *Id.*, p. 17. That is because the latter only impacts Cooper and Hansell while they are "active drug user[s]," as the former only applied "while impaired." *Id.* Cooper and Hansell could take themselves out of that box by "simply ending their drug use." *Id.*

Further, the District Court deemed the Challenged Laws to be analogous to those disarming the mentally ill. *Id.*, p. 18. The District Court understood that the Appellants "recoil" at that comparison, but determined that, even if medical marijuana patients are not themselves mentally ill, "both categories can be dangerous when armed." *Id.* It adopted the Appellees' contention that marijuana use "causes significant mental and physical impairments that make it dangerous for a person to possess firearms" to support this. *Id.*, p. 17-18 *citing* Doc. 14, p. 28 *and United States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2010). The District Court also concluded from the Amended Complaint that Cooper and Hansell were "habitual users" of marijuana, which led to the determination that their disarmament was analogous to those historically relating to "alcoholics," "the mentally ill," and others "the government fairly views as dangerous." *Id.*

## Standard of Review

The question of whether a law or regulation violates the Second Amendment, or any other provision of the United States Constitution, is reviewed de novo. *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1043 (11th Cir. 2022). Similarly, a district

court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim is reviewed de novo. *Holland v. Carnival Corporation*, 50 F.4th 1088, 1093 (11th Cir. 2022).

## SUMMARY OF THE ARGUMENT

The Order should be reversed. The Defendants did not meet their burden of showing that precluding marijuana users who comply with their state medical marijuana laws from possessing or purchasing a firearm fits within the history and tradition of the Second Amendment. The historical analogies the Appellees sought to draw were neither distinctly nor relevantly similar to the Challenged Laws.

As it relates to criminality, Cooper and Hansell do not fit within any group that has historically been disarmed. Some courts and judges have determined that there is historical support for all felons and felon equivalents losing their Second Amendment rights. However, state law-compliant medical marijuana patients are, at worst, misdemeanants. Others argue that only violent or dangerous criminals may be stripped of the right to bear arms. The Appellees do not assert that marijuana use is such a violent offense.

There is no historical support in the record for disarming those who commit non-violent misdemeanors. It appears that every court that has addressed this issue agrees with this contention. Although the Appellees seek to analogize Cooper and

Hansell to domestic abusers (a group whose violence renders them felon equivalents), their actions are not distinctly or relevantly similar to such offenders.

In fact, there is even less support for disarming state law-compliant medical marijuana users than there would be for non-violent misdemeanants. At least for the latter group, they have shown some significant level of disrespect for clear societal norms and regulations. Cooper and Hansell, however, only participate in Florida's medical marijuana program because Congress has seen fit to expressly protect it. Whereas those who engage in behavior they know puts them at risk of criminal punishment show an unwillingness to comply with communal laws and judgements, Cooper and Hansell evidence no such disregard.

The Appellees and the District Court contend that the Appellants require historical regulations that are too directly in-line with the Challenged Laws. However, the Appellants respectfully assert that the traditional regulations relied upon in the Order that are not analogous to the Challenged Laws. As Justice Thomas made clear in *Standing Akimbo,* Congress' current marijuana policies are essentially without equivalent. Although the Appellees argue this contradictory approach should be simply disregarded or overlooked, it shows that Congress has deemed state compliant-medical marijuana use to be (at least currently) undeserving of punishment. This makes Cooper and Hansell's actions unlike those of traditional criminals.

Further, the Appellees' analogy to historical laws precluding those who are currently intoxicated from possessing a firearm does not fit the Appellants' pled circumstances. Such laws applied only at the time of intoxication. However, the Appellees seek to stretch them to cover the general use of an intoxicating substance. Such a leap is not permitted in the *Bruen* analysis.

The same is true for historical regulations relating to alcoholics and other addicts. Such persons have lost all control over their behavior and their ability to comply with the law. However, Cooper and Hansell only take those actions that Congress has seen fit to protect. Further, they are willing and able to follow the laws and regulations of their state medical marijuana program. The Appellees have not shown any relevant similarity between state law-compliant medical marijuana users and addicts.

In the alternative, the Order should be dismissed because the District Court did not construe all well-pled allegations in the Amended Complaint in the light most favorable to the Appellants. First, as discussed, The District Court deemed Cooper and Hansell to be the equivalent of habitually intoxicated for as long as they could be considered a "current user of controlled substances," pursuant to 27 C.F.R. § 478.11 (1968). However, as that regulation makes clear, a person who has not used marijuana for weeks or months could fit this standard. Nothing in the Amended

Complaint references the frequency of Cooper or Hansell's marijuana use or implies that they ingest that substance habitually.

Second, the District Court deemed the individual Appellants to be legally analogous to the mentally ill based upon their state law-compliant medical marijuana use. The allegations in the Amended Complaint do not permit this conclusion. Nothing is pled that implies they have lost any ability to reason. To the contrary, they have been able to comport their behavior to the laws and regulations of Florida's medical marijuana program. At the least, this is far from the most favorable view of the Appellants' allegations, which they were legally entitled to at the motion to dismiss stage.

## ARGUMENT

## I.   THE ORDER OF DISMISSAL SHOULD BE REVERSED.

### A.   The Appellees did not meet their burden of showing that disarming state law-compliant medical marijuana users comports with the history and tradition of the Second Amendment.

Two rapidly evolving areas of law converge in this matter. For Second Amendment challenges, federal courts across the country are working to implement and interpret the historical test that *Bruen* requires. As it relates to medical marijuana, a majority of states now openly permit an activity that federal law prohibits. Instead of enforcing federal law, the federal government has offered express protection to state medical marijuana programs and the citizens who

participate in them.[7] This has led Justice Thomas to state that the "federal Government's current approach" to marijuana "is a half-in, half-out regime that simultaneously tolerates and forbids" its use. *Standing Akimbo*, 141 U.S. 2236-2237. He further deemed this approach "more episodic than coherent." *Id.* at 2238. The question before the Court is how the unprecedented circumstances of the latter fit within the framework of the former.

### 1.     State law-compliant medical marijuana users are not felons, felon equivalents, or violent offenders

In applying *Bruen*, many courts and judges have explored the effects of criminal actions and classifications within the history and tradition of the Second Amendment. Several district courts have concluded that there is historical support for disarming all persons convicted of felonies. *See Range v. Attorney General*, 53 F.4th 262, 269 n. 6 (3d Cir. 2022) (decision vacated, motion for reconsideration en banc granted, Jan. 6, 2023) (listing nearly 20 district court opinions upholding the federal felon-in-possession law pursuant to *Bruen*). This Court reached the same conclusion pre-*Bruen*. *See United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010).

---

[7] As will be discussed, there is disagreement amongst the parties regarding the extent of the Rohrabacher-Farr Amendment's effect and purpose. However, as the district court noted, it appears settled that, at least, "Congress has precluded the Department of Justice (for now) from prosecuting crimes that Congress (for now) chooses to maintain on the books." Doc. 21, p. 2-3.

In *Range*, a Third Circuit panel expounded on this reasoning in a decision that was recently vacated for en banc reconsideration.[8] In that matter, an individual who pled guilty to "the felony equivalent charge of welfare fraud," under Pennsylvania law, argued that his disarmament did not fit the history and tradition of the Second Amendment. 53 F. 4th at 266. Although classified as a misdemeanor in Pennsylvania, the maximum incarceration an offender could receive for this offense was five years. *Id.* Due to this maximum punishment, the panel deemed that offense a "felony equivalent" pursuant to federal law. *Id.* at 285; *see also* 18 U.S.C § 921(a)(20)(b).

The *Range* panel determined that those who commit any "felony or felony equivalent" offense, violent or non-violent, have proven themselves "untrustworthy parties to the nation's social compact." *Id.* at 274. It supported this with historical citations showing that "disrespect for the sovereign" and a demonstrated unwillingness to "obey the king" had been a basis for precluding firearms possession. *Id.* at 274-281.

The *Range* panel also provided the following historical background for why such disarmament occurred at those times:

> John Locke—whose views profoundly influenced the American
> revolutionaries—argued that the replacement of individual judgments

---

[8] The Appellants only reference and cite this now-vacated opinion as an illustrative example of the reasoning behind and potential historical support for the position that disarming all felons comports with the *Bruen* analysis.

of what behavior is transgressive with communal norms is an essential characteristic of the social contract. *See* John Locke, *Two Treatises of Government* § 163 (Thomas I. Cook, ed., Hafner Press 1947) (reasoning "there only is political society where every one of the members hath quitted his natural power [to judge transgressions and] resigned it up into the hands of the community"). Members of a social compact, he explained, have a civic obligation to comply with communal judgments regarding proper behavior.

In the newly proclaimed states, compliance with that civic obligation translated to entitlement to keep and bear arms, with many of the newly independent states enacting statutes that required individuals, as a condition of keeping their arms, to commit to the incipient social compact by swearing fidelity to the revolutionary regime. *See* Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment*, 25 Law & Hist. Rev. 139, 158 (2007).

*Id.* at 277-278 (footnotes omitted).

Other judges and historians, however, disagree with the *Range* panel's conclusion that historical views regarding disrespect for the social compact permit the disarmament of non-violent felons. Instead, they argue and offer historical citations supporting the conclusion that the history and tradition of the Second Amendment only permit disarming those who have been convicted of violent crimes. *See* Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms,* 20 Wyo. L. Rev. 249, 257 (2020); *Kanter v. Barr,* 919 F.3d 437, 454 (7th Cir. 2019) (Barrett, A. dissenting) (("The historical evidence . . . [shows] that the legislature may disarm those who have demonstrated a proclivity for violence or whose possession of guns would otherwise threaten the public

safety."); *Binderup v. Attorney General of the United States,* 836 F.3d 336, 369 (3d Cir. 2016) (en banc) (Hardiman, concurring in part) ("…the historical record leads us to conclude that the public understanding of the scope of the Second Amendment was tethered to the principle that the Constitution permitted the dispossession of persons who demonstrated that they would present a danger to the public if armed."); *Folajtar v. Att'y Gen. of the U.S.,* 908 F.3d 897, 914 (3d Cir. 2020) (Bibas, J. dissenting) ("...the limit on the Second Amendment right was pegged to dangerousness, not some vague notion of 'virtue.'"). The appellant in *Range* advanced this position in moving for reconsideration of the panel decision. *See* Plaintiff-Appellant's Petition for Rehearing En Banc, 3d. Cir. Case No. 21-2835 (Doc. 68).

The Court need not decide which of these positions are correct in this matter, as the Appellees have not met their burden pursuant to *Bruen* under either of them. Even when viewing their actions in the worst possible light, state law-compliant medical marijuana patients are not relevantly similar to felons. Unlike the offense in *Range*, marijuana possession would not subject an individual to the felony-equivalent punishment of multiple years' imprisonment pursuant to either federal or Florida law, absent a prior marijuana conviction on their record.[9] The Appellees do not argue otherwise.

_____

[9] Even if a state law-compliant medical marijuana user did have a previous federal

Instead, the Appellees contend that the "historical pedigree" discussed in *Yancey* shows that Cooper and Hansel are analogous to felons. Doc. 16, p. 14. They cite that decision as showing an "unbroken history" of disarming drug users through that court's citation of "historical scholarship about the founding era and case law and treatises from the Nineteenth Century." *Id.* However, the "unbroken history" that *Yancey* references is to states' general regulation of "the possession and use of firearms," and not historical laws specifically regulating substance use. 621 F.3d at 684. *Yancey* does not cite to a historical law from a pertinent time period that deemed the general use of any intoxicating substance sufficient for disarmament. Accordingly, that case does not aid the Appellees in showing that any historical regulations were distinctly or relevantly similar[10] to the Challenged Laws.

In fact, *Yancey* helps make clear that the Appellees have not met their burden in this matter. It notes that the "broad objective" of § 922(g)(3), one of the Challenged Laws at issue in this matter, was "suppressing armed violence." *Id.* at

conviction for marijuana possession, the President of the United States has issued a blanket pardon for all such offenses. *See* Doc. 19, 19-1.

[10] As the District Court in *Lewis* noted, it appears possible that the *Bruen* majority intended for "distinctly similar" analogues to general and persistent societal problems to meet a more exacting or different standard than the "relevantly similar" comparisons for newer issues. The Appellants have sought to use those phrases distinctly when the circumstances or context requires it. However, the Appellants do not believe the Court must resolve that question in this matter, as the historical analogues the Appellees offered and the Order cited are neither distinctly nor relevantly similar to the Challenged Laws.

684. As discussed in *Bruen*, this is a general societal problem that has existed for centuries. However, no citations offered in *Yancey* or that the Appellees have otherwise provided in this matter show that a government has ever sought to meet that objective by disarming persons for their general use of an intoxicating substance. This is "relevant evidence" that the Challenged Laws are inconsistent with the history and tradition of the Second Amendment. *Bruen*, 142 U.S. at 2131. *See also United States v. Price*, 2022 WL 6968457 at \*5-6 (S.D. W. Va., Oct. 12, 2022).

Although *Yancey* states that disarming "habitual drug abusers is analogous to disarming felons," that decision does not support a finding of such for state law-compliant medical marijuana users. 621 F.3d at 684. First, as will be discussed below, there is no evidence or pleading in the record from which it would be inferred that Cooper or Hansell are "habitual drug abusers" or otherwise akin to addicts. Second, *Yancey*'s justification for this assertion stemmed largely from studies discussing the violence and danger associated with the illicit drug trade. *Id*. at 686. This deals with the sort of policy analysis that *Bruen* eschewed. Without a distinctly or relevantly similar historical analogue showing that state law-compliant medical marijuana use is akin to the commission of a felony, this statement from *Yancey* should carry no weight in the *Bruen* analysis.

Regarding the contrary view that only individuals who commit violent or inherently dangerous crimes may be disarmed, the Appellees' failure to cross the *Bruen* threshold would be even more apparent using that standard. They have offered no evidence that state law-compliant medical marijuana use is somehow a violent crime. Rather, the Appellees have explicitly stated that they are advancing no such argument. Doc. 16, p. 12.

The Appellees make a passing attempt to analogize medical marijuana patients to domestic abusers. Doc. 16, p. 9-10. Courts and judges appear to have largely converged around the conclusion that this misdemeanor offense is a felony equivalent for Second Amendment purposes. This is based on that offense's violent nature. *See United States v. White*, 593 F.3d 1199, 1206 (11th Cir. 2010) ("We see no reason to exclude § 922(g)(9) from the list of longstanding prohibitions on which *Heller* does not cast doubt."); *United States v. Booker*, 644 F.3d 12, 24-25 (1st Cir. 2011) ("In covering only those with a record of violent crime, is arguably more consistent with the historical regulation of firearms than [those which extend] to violent and nonviolent offenders alike."); *United States v. Jackson*, 2022 WL 3582504 at *2 (W.D. Okla., Aug. 19, 2022) ("Domestic violence misdemeanants can logically be viewed as relevantly similar to felons who should be denied weapons for the same reason.") (internal quotations and citation omitted); *United States v. Nutter*, 2022 WL 3718518 (S.D. W. Va., Aug. 29, 2022) ("The surety laws

cited by the United States establish that domestic violence was a concern in the founding era, and that laws designed to restrict the rights of those who committed such abuse, and protect the victims, were not viewed as controversial.")

However, those groups are not distinctly similar. Domestic violence (or, at least, violent crime generally) has been a cause of societal concern both during and since the pertinent historical periods. The Appellees offered nothing to show that any historical law disarmed those who generally used an intoxicating substance to combat that long-standing problem.

Further, the Appellees' comparison between state law-compliant medical marijuana use and domestic violence is a bridge too far under *Bruen*. They argue that those who commit both acts are dangerous, but that one is due to their "propensity for violence" and the other relates to marijuana's "impairing effects." Doc. 16, p. 9-10. This is akin to arguing that driving while intoxicated and driving in a heavy rainstorm are equivalent because both are dangerous. The former is due to the driver's state of mind and the latter relates to conditions outside of their control. Although there is some equivalence in possible outcomes, the two are not relevantly similar for purposes of why or how the government would seek to regulate them. In this case, medical marijuana use does not share the relevant characteristic (specifically, its violent nature) that renders domestic abuse a felony-equivalent offense.

**2.     The Appellees have shown no historical support for disarming misdemeanants**

The District Court concluded that Congress has deemed marijuana use "serious business." Doc. 21, p. 15. However, the designation of a crime as a misdemeanor usually presents "an indication of non-seriousness that is lacking" when an offense is classified as a felony. *Folajtar v. Att'y Gen. of the U.S.*, 980 F.3d 897, 903 (3d Cir. 2020). The *Range* panel determined that nothing in the history and tradition it cited suggests "that legislatures have carte blanche to disarm anyone who commits any crime." *Id.* at 273 n. 14. Rather, it concluded only that "the disarmament of individuals convicted of felony and felony-equivalent offenses comports with the Second Amendment." *Id.*

Multiple courts and judges have similarly concluded, both pre-and-post-*Bruen*, that misdemeanors and other minor offenses do not present a historical basis for disarmament. *See Binderup*, 836 F.3d at 349 ("We agree with…the unremarkable proposition that a person who did not commit a serious crime retains his Second Amendment rights."); *Kantor*, 919 F.3d at 456 (Barrett, dissenting) ("As far as I can find, no one even today reads this provision to support the disarmament of literally all criminals, even nonviolent misdemeanants."); *Connelly*, 2022 WL 17829158 at *3 ("The Court thus struggles to discern the historical justification for disarming a woman on the grounds that she allegedly committed a crime for which she would face little to no punishment."); *United States v. Jackson*, 2022 WL 3582504, *2

(W.D. Oklahoma, Aug. 19, 2022) ("This Court declines to read into *Bruen* a qualification that Second Amendment rights belong only to individuals who have not violated any laws.")

The Appellees have offered no evidence to the contrary. Although there is historical support for the concept that some crimes could lead to the forfeiture of the right to bear arms, this is a far cry from proving that *any and all* such behavior would be sufficient for this. The only misdemeanor the Appellees cite as justifying the loss of Second Amendment rights is the distinctly-and-relevantly dissimilar offense of domestic violence. There is no support in the record contradicting the previously-cited and well-reasoned conclusions referencing the disarmament of non-violent misdemeanants.

If such low-level offenses were deemed sufficient to disarm an individual, it would essentially vitiate the Second Amendment protections that *Heller* and *Bruen* seek to protect. There is no legal or logical basis for the position that the federal government could strip individuals of a core, pre-existing constitutional right on the basis of a criminal violation that it has categorized as minor. Clearly, for the government to strip a person of this right, their conduct must be sufficiently transgressive to support such a severe punishment. Permitting the government to impose such a harsh collateral consequence on each and every legal misstep would

be the type of "regulatory blank check" that *Bruen* made clear it was not providing.

142 U.S. at 2133.

### 3. There is less historical support for disarming state law-compliant medical marijuana users than there would be for traditional misdemeanants

Disarming state law-compliant medical marijuana users would have even less historical backing than stripping non-violent misdemeanants of the right to bear arms. At least as to the former group, the government has sent a clear signal that the conduct at issue was not allowed (even if the punishment for it was relatively minor). Accordingly, offenders have shown at least some level of disrespect for society's laws, as the *Range* panel discussed.

The entire purpose of criminalizing an act is to provide "ordinary people" with "fair notice" that certain actions are prohibited. *Sessions v. Dimaya*, 138 U.S. 1204, 1212 (2018) (internal citations omitted); *see also Daniel v. City of Tampa*, 38 F.3d 546, 551 (11th Cir. 1994).[11] In this respect, it is Congress' responsibility to "define what conduct is sanctionable and what is not." *Id.*

---

[11] The Appellants offer these citations not to argue that the Rohrabacher-Farr Amendment has somehow rendered marijuana legal. Rather, as discussed herein, they are intended to show that Congress has encouraged and protected medical marijuana patients' actions in a manner contrary to how it has historically treated other violations of federal law. This makes such users' actions distinctly and relevantly dissimilar, in the *Bruen* context, from those of traditional criminals.

Although marijuana use remains *per se* federally illegal, the Rohrabacher-Farr Amendment informs ordinary citizens that their state law-compliant participation in a medical marijuana program is not currently sanctionable. The Appellees agree that Congress has precluded the Department, for at least the time being, from prosecuting medical marijuana users who follow their state laws. Further, the First Circuit has noted that Congress "presumably" passed the Rohrabacher-Farr Amendment "with an awareness of the beneficial consequences" that it would have "for consumers who seek to obtain medical marijuana." *NE Patients Group v. United Cannabis Patients and Caregivers of Maine*, 45 F. 4th 542, 553 (1st Cir. 2022). The Order includes a similar conclusion. Doc. 21, p. 14 n. 8. Through this act, Congress has all but encouraged eligible citizens to partake in their state medical marijuana programs.

Congress' current treatment of medical marijuana is unprecedented. The Appellees can offer no historical analogue for, as Justice Thomas noted, Congress simultaneously tolerating and forbidding the same conduct. *Standing Akimbo*, 141 U.S. at 2236-2237. Instead, the Appellees rely upon past laws which provided clear notice that certain actions were prohibited and would subject a person to criminal penalties. There was no ancillary federal protection for those actions or other contradictory government statement which encouraged citizens to partake in them. The fact that Congress has currently exempted Cooper and Hansell's actions from

any such legal punishment makes their conduct not distinctly or relevantly similar to the commission of any traditional or historical crime.

Both the Appellees and the District Court seek to counter this by noting that the Rohrabacher-Farr Amendment only currently protects medical marijuana users' conduct. If Congress does not include this language in the next federal budget, then this protection would cease. Thus, the Order states that the Department is precluded only "for now" from arresting medical marijuana users. Doc. 21, p. 2-3. For this reason, the District Court deemed Cooper and Hansell's reliance on the Rohrabacher-Farr Amendment to be irrelevant and their marijuana use to be equally as criminal as it would be otherwise.

This position does not aid the Appellees in carrying their burden. First, Cooper and Hansell rely on the Rohrabacher-Farr Amendment to inform their current conduct. If this budget language is not renewed, then such state law-compliant medical marijuana users will have to reassess their participation in those programs. This is how the government should want and expect any rational and law-abiding citizen to conduct themselves when a law changes. Second, Congress' current protection of medical marijuana use is, at least, a strong statement that it considers such activity less serious and transgressive than any historical criminal conduct the Appellees rely upon. This would include even other non-violent misdemeanors. Accordingly, the Appellees' proposed historical analogues are not distinctly or

relevantly similar to the Challenged Laws and the Second Amendment restrictions forced upon Cooper and Hansell are not comparably justified to those of historical criminals.

The Appellees and the District Court incorrectly contend that the Appellants require a "historical twin" for the Challenged Laws by insisting that the Rohrabacher-Farr Amendment be considered as part of this analysis. To the contrary, any comparison that does not account at least generally for the half-in, half-out nature of Congress' medical marijuana policy is wholly insufficient. The right to bear arms is a core constitutional protection. The historical regulations and case law cited in this matter show that only a significant and serious unwillingness or inability to comport a person's behavior to societal norms could be sufficient to strip them of this right. Here, Cooper and Hansell take only those actions that Congress has currently protected and effectively encouraged. This is wholly different from any historical action leading to disarmament. The Appellants are justified in requesting that the Appellees historically and logically account for this.

The Appellants do not argue that the Appellees must be able to show an identical scenario in order to satisfy *Bruen*; one in which a historical regulation is paired with a budget provision that precludes its enforcement. As noted, Congress has chosen to safeguard what would otherwise be criminal conduct in an unprecedented way. Instead, the question before the Court is whether state law-

compliant medical marijuana users are distinctly similar to any group that has historically be disarmed. This could include all felons and felon-equivalents, or potentially only those who commit violent offenses. It appears highly unlikely that it would include non-violent misdemeanants. However, in any of those circumstances, a person would have committed an act that their government expressly forbade with no Congressional action to the contrary. There is, at least, a significant distinction between such actions and those of Cooper and Hansell.

### 4. Historical regulations disarming those under the influence of a substance or addicts are not analogous to the Challenged Laws.

Beyond any issue of criminality, the District Court also reached the incorrect conclusion that state law-compliant medical marijuana users may be disarmed based purely upon that substance's impairing effects. The Appellees have offered no historical analogues showing that the general use of any impairing substance has ever been cause for disarmament. The only laws they cite to precluded the possession of firearms during the discreet time while a person was under the influence of alcohol or a comparable substance. Doc. 21, p. 17 *citing* Doc. 14, p. 35-37.

As these historical regulations show, preventing people who are intoxicated from harming others with a firearm has been a persistent societal problem for centuries. The Appellees have not shown that regulations disarming a person based on their general use of a substance were ever used to prevent such issues. This lack

of a distinctly similar regulation is relevant evidence that the Appellees' argument does not fit within the history and tradition of the Second Amendment.

The Appellees stretch regulations disarming the intoxicated to justify a conclusion that state law-compliant medical marijuana users are never capable of safely wielding a firearm. This takes the analogical reasoning discussed in *Bruen* beyond its breaking point. The Appellees rely in part on a historical New York law which prohibited firing guns on New Year's Eve due to concerns of wide-spread drunkenness. Doc. 14, p. 35 *citing Heller*, 554 U.S. at 632 (quoting Ch. 1501, 5 Colonial Laws of New York 244-46 (1894)). The Challenged Laws would be equivalent to asserting that, if a person ever attends a crowded celebration where alcohol is consumed in significant amounts, then they cannot be trusted generally to carry a firearm. If they did, they might (in their sometimes intoxicated state) take their gun to such an event. In this vein, the Challenged Laws do not impose a comparable burden on state law-compliant medical marijuana users because they impair their Second Amendment rights at all times instead of only for periods of intoxication. They also are not comparably justified, as they regulate Cooper and Hansell's conduct even at times when their faculties are not impaired.

The Appellants do not contest that there is historical precedent for the general disarmament of those who are addicted to controlled substances, such as alcoholics. *Heller* specifically noted that it did not call laws disarming the "mentally ill" into

question. 554 U.S. at 626-627; *see also* Carlton F.W. Larson, *Four Exceptions in Search of A Theory*: *District of Columbia v. Heller and Judicial Ipse Dixit*, 60 HASTINGS L.J. 1371, 1378 (2009) (which noted historical regulations permitting "justices of the peace to confine individuals with dangerous mental impairments.") *Yancey* reasonably held that disarming addicts was an equivalent and similarly justified regulation, due to the "difficulty exercising self-control" associated with both. 621 F.3d at 685.

However, nothing in the Amended Complaint states or implies that Cooper, Hansell, or similarly-situated medical marijuana users are addicts. Rather, by following the mandates of their state programs, they have displayed both a willingness and ability to comprehend and comport their behavior with governmental requirements. If they did not, then the Rohrabacher-Farr Amendment would not protect their actions. *See Bilodeau*, 24 F.4th at 715. Although their marijuana use remains federally illegal, their pled reliance on the Rohrabacher-Farr Amendment and compliance with state law shows they are able to reasonably regulate their actions.

That a state law-compliant medical marijuana user fits the classification of "unlawful user" in 27 C.F.R. § 478.11 (1968) does not permit an assumption of addiction, at least as that term is used in historical regulations. *United States v. Cook* noted that "a person who routinely uses marijuana on weekends" may violate this

40

current law "by possessing a firearm on a Tuesday or Wednesday…" 970 F.3d 866, 879 (7th Cir. 2020). In fact, a positive drug test within the past year would be sufficient to place a person in this current category. *See* 27 C.F.R. § 478.11 (1968).

The Appellees have not shown that any historical regulation regarding alcoholics or addicts operated in this manner. They have not cited to a historical regulation that classified an individual as an addict simply because they had consumed a substance in recent days or weeks. Yet, they try to deem medical marijuana patients' general use of that product analogous to losing total control over it. These situations are not distinctly or relevantly similar.

*Yancey* provides a true example of the types of addicts who have been historically disarmed. In that case, the defendant admitted that he had engaged in the state-and-federally-illegal use of marijuana every day for the approximately two years prior to his arrest. 621 F.3d at 682. Such a habitual user, the court reasoned had "lost the power of self-control" relating to marijuana use and, therefore, would pose "substantial health and safety hazards" to the public if permitted to possess firearms. *Id.* at 686. Essentially, the record in *Yancey* established that the defendant had lost the ability to comport their behavior with the law. Such a person could reasonably be seen as relevantly similar to the alcoholics and addicts that all parties agree may be historically disarmed. However, nothing is pled which would imply

41

Cooper or Hansell's conduct is distinctly, relevantly, or even remotely similar to this.

Accordingly, disarming state law-compliant medical marijuana users is not comparably justified to historical regulations aimed at addicts or habitual users. The rationale for such past laws was clearly that alcoholics and equivalents had lost control of their actions. The government displayed a historical concern that, as in *Yancey*, these compulsions would lead those individuals to dangerous or illegal behavior. Cooper and Hansell's behavior have not been shown to present a comparable risk. Instead, they comport their behavior to the regulations of their state medical marijuana program, and they only participate in that program because the federal government has seen fit to protect it. This is a far cry from the type of behavior that has previously justified the removal of a person's core constitutional right.

The Appellees and the District Court downplay this restriction by arguing that disarming Cooper and Hansell imposes a minimal burden on them. As the Order states, their disarmament "exists only as long as [they] fit the" legal definition of an "unlawful user." Doc. 21, p. 16. This mirrors language in *Yancey* that the defendant in question could "regain his right to possess a firearm by simply ending his drug abuse." 621 F.3d at 686.

As an initial matter, this highlights a significant contradiction in the Order's reasoning. The District Court deemed Cooper and Hansell to be analogous to alcoholics. However, as *Yancey* noted, a clear element of such addiction is a loss of self-control regarding intoxicant use. Accordingly, if someone is truly akin to an alcoholic or drug addict, then they are not at least presently capable of simply ceasing their substance abuse. The Appellees cannot reasonably argue that state law-compliant medical marijuana users are simultaneously capable of ending such use at the drop of a hat and that they have lost all control over it.

Regardless, the Challenged Laws do not impose a comparable burden on state law-compliant marijuana users as they did those who were historically disarmed. Cooper and Hansell face the loss of their Second Amendment rights due to their general use of a substance. No citizen has historically faced this burden. Even if they do not face a life-long firearms restriction, the current loss of Cooper and Hansell's right to bear arms places an ahistorical and unconstitutional burden upon them. That burden is also not imposed for the same reason, as Cooper and Hansell, as pled, have not displayed an inability to control their actions.

Finally on this point, this Court should consider the Appellees' argument that state law-compliant medical marijuana users are too "dangerous" to possess firearms with great caution and skepticism. The historical disarmament discussed herein has related to specific and clear classifications of persons and activities, such as felons

(violent or otherwise), felon equivalents, those currently under the influence of intoxicants, and addicts. The Appellees however, seek to stretch these regulations to argue that Cooper and Hansell's general use of a substance shows that they are untrustworthy around firearms at all times.

Accepting such an argument would grant the government significant and vague discretion in deciding which citizens may maintain their core constitutional rights. It is "one thing to say that certain weapons or activities fall outside the scope of the right," but another "to say that certain *people* fall outside of the Amendment's scope." *Kanter*, 919 F.3d at 452 (Barrett, dissenting). Binding disarmament to certain actions or concrete classifications can provide a limiting principal to courts and fair notice to citizens of what can exclude them from the right to bear arms. Granting the government broad authority to judge citizens' trustworthiness would set a dangerous precedent to the contrary.

For these reasons, the Appellees have not met their burden of showing that state law-compliant medical marijuana users are analogous to those who have been historically disarmed and the Order should be reversed.

### B.    The District Court did not construe all well-pled allegations in the Amended Complaint in the light most favorable to the Appellants.

Beyond the complex constitutional issue at hand, the Order should also be reversed because it fails to abide by well-settled case law regarding motions to dismiss. As the Court is well aware, such a motion is "limited to the four corners of

the complaint." *Gunter v. Advanced Correctional Healthcare, Inc.,* 844 Fed. Appx. 189, 191 n. 2 (11th Cir. 2021). A reviewing court must accept all well-pled allegations as true and construe them in the light most favorable to the plaintiffs. *Id.* at 192. This includes a requirement that any reasonable inferences from the pleading be drawn in such a light. *MSP Recovery Claims, Series LLC v. Metropolitan General Insurance Company*, 40 F.4th 1295, 1302 (11th Cir. 2022).

The Order does not, at least, construe the allegations in the Amended Complaint in the light most favorable to the Appellants. The District Court deemed Cooper and Hansell akin to "habitual marijuana users." Doc. 21, p. 18. Unlike *Yancey*, there are no facts or allegations discussing the frequency of their marijuana use, let alone whether such use would qualify as habitual. The District Court also deemed them analogous to "alcoholics and the mentally ill." *Id.* As stated, no inference of addiction can be drawn from the allegations in this matter. At the least, the Order construes the Appellants' allegations in a light that is not the most favorable to them.

The Amended Complaint seeks to protect the rights of state law-compliant medical marijuana users generally as it relates to the Challenged Laws. However, if the Appellees could prove that a user is in fact addicted to marijuana and has lost control over the use of that substance, this could permit their disarmament. Such a person would be relevantly similar to an alcoholic, which is a historically disarmed

class. However, the fact that some patients could be addicted to this substance does not prove or imply that all users are. Any such claim that a person is an addict (be it to medical marijuana or another substance) must be proven through evidence. The Order makes such a finding without any pleading or evidence supporting it.

For the same reasons, the District Court's conclusion that Cooper and Hansell are analogous to the mentally ill does not construe their pleadings in the light most favorable to them. Beyond any question of personal offense to this comparison, there is simply nothing in the Amended Complaint that states or implies that they are unable to control their conduct in this manner. Further, nothing is pled that implies they have lost any level of control of their mental faculties or behavior. If the Appellees wish to prove that Cooper or Hansell's marijuana use has impaired their mental functioning, then they must do so through evidence.

Construing the Amended Complaint in the light most favorable to Cooper and Hansell, they are able to follow their state medical marijuana laws and their decision to participate in that program is reasonably informed by Congress' express protection. This contradicts or, at the least, does not permit the conclusion reached in the Order that they are akin to lunatics.

## CONCLUSION

Accordingly, the Order should be (a) reversed on the grounds that the Appellees have not met their burden of showing that the Challenged Laws are within

the history and tradition of the Second Amendment, or, in the alternative (b) reversed on the grounds that the Order did not construe the Amended Complaint in the light most favorable to the Appellants. Further, this matter should be remanded to the District Court for further proceedings consistent with this Court's judgment.

Respectfully submitted,

/s/ William D. Hall
William D. Hall
Florida Bar No. 67936
Jordane Wong
Florida Bar No. 1030907
**DEAN, MEAD & DUNBAR**
106 E. College Ave., Suite 1200
Tallahassee, Florida 32301
Tel: (850) 999-4100
Fax: (850) 577-0095
whall@deanmead.com
jwong@deanmead.com
kthompson@deanmead.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,820 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because this document has been prepared in a proportionally spaced typeface using Time Romans 14-point font.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 30, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ William D. Hall
William D. Hall, Esquire