NO. 22-13893

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

VERA COOPER,
NICOLE HANSELL,
NEILL FRANKLIN,

*Plaintiffs–Appellants,*

v.

ATTORNEY GENERAL OF THE UNITED STATES,
UNITED STATES OF AMERICA,
DIRECTOR OF BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,

*Defendants – Appellees.*
_____/

On Appeal from the United States District Court
for the Northern District of Florida
Case No. 4:22-cv-00164-AW-MAF

---

### APPELLANTS' REPLY BRIEF

---

William Dean Hall, III
Jordane P. Wong
Dean Mead & Dunbar
106 East College Avenue, Ste. 1200
Tallahassee, Florida 32301
850-999-4100
*Counsel for Appellants*

Adam J. Komisar
Komisar Spicola, P.A.
101 North Gadsden Street
Tallahassee, FL 32301
850-328-4447
*Counsel for Appellant*
*Nicole Hansell*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellants, Vera Cooper, Nicole Hansell and Neill Franklin, through their undersigned counsel, pursuant to 11th Cir. R. 26.1-1, hereby certify that the following persons or entities have an interest in the outcome of this case:

Boynton, Brian – Trial Counsel for Defendants/Appellees; Principal Deputy Assistant Attorney General.

Butler, Steven – Counsel for Defendants/Appellees.

Caminez & Yeary, P.A. – Counsel for Plaintiff/Appellant Franklin.

Cooper, Vera – Plaintiff/Appellant.

Dean, Mead, Egerton, Bloodworth, Capouano & Bozart, P.A. – Counsel for Plaintiffs/Appellants.

Dettelbach, Steven – Defendant/Appellee, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives.

Farby, Leslie - Trial Counsel for Defendants/Appellees; Assistant Branch Director for the United States Department of Justice.

Franklin, Neill – Plaintiff/Appellant.

Fried, Nicole – Former Plaintiff/Appellant, in her official capacity.

Garland, Merrick – Defendant/Appellee, in his official capacity; Attorney General of the United States.

Hall, William – Counsel for Plaintiffs/Appellants.

Hansell, Nicole – Plaintiff/Appellant.

Hazel, Steven – Counsel for Defendants/Appellees; United States Department of Justice.

Komisar, Adam – Counsel for Plaintiff/Appellant Hansell.

Komisar Spicola, P.A. – Counsel for Plaintiff/Appellant Hansell.

Newman, Jeremy – Trial Counsel for Defendants/Appellees.

Raab, Michael S. – Counsel for Defendants/Appellees.

Restaino, Gary – Former Defendant/Appellee, in his previous official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives.

Russell, Daniel – Counsel for Plaintiffs/Appellants.

Simpson, Wilton – Former Plaintiff/Appellant, in his official capacity.

Stern, Mark B. – Counsel for Defendants/Appellees.

Winsor, Hon. Allen – United States District Judge.

Wong, Jordane - Counsel for Plaintiffs/Appellants.

Wright, Abby – Counsel for Defendants/Appellees; Assistant Director, United States Department of Justice Civil Division, Appellate Staff.

Yeary, Ryan – Counsel for Plaintiff/Appellant Franklin.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ..............................................................C-1

TABLE OF CONTENTS.......................................................................... i

TABLE OF AUTHORITIES .................................................................... ii

ARGUMENT ...........................................................................................1

I.      THE ORDER OF DISMISSAL SHOULD BE REVERSED. ...................1

  A.    The Appellants are within "the people" the Second Amendment protects 4

  B.    The Appellees did not meet their burden of showing that disarming state
       law-compliant medical marijuana users comports with the history and
       tradition of the Second Amendment...........................................................8

    1.  State law-compliant medical marijuana users are not felons, felon-
    equivalents, or violent offenders, and the Appellees have shown no historical
    support for disarming misdemeanants...........................................................8

    2.  There is less historical support for disarming state law-compliant medical
    marijuana users than there would be for traditional misdemeanants. ............11

    3.  Historical regulations disarming those under the influence of a substance
    or addicts are not analogous to the Challenged Laws. ..................................14

    4.  The Appellees' new proposed historical analogues are unavailing.........24

  C.    The District Court did not construe all well-pled allegations in the
       Amended Complaint in the light most favorable to the Appellants.........25

Conclusion ..............................................................................................26

Certificate of Compliance .......................................................................27

Certificate of Service ..............................................................................27

i

# TABLE OF AUTHORITIES

## Cases

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ......................................................................... passim

*Hamilton v. Pallozzi*,
848 F.3d 614 (4th Cir. 2017) ..........................................................8

*Kansas v. Hendricks*,
521 U.S. 346 (1997) .......................................................................13

*Kanter v. Barr*,
919 F.3d 437 (7th Cir. 2019) ..........................................................5

*Medina v. Whitaker*,
913 F.3d 152 (D.C. Cir. 2019) ........................................................8

*National Rifle Association v. Bondi*,
61 F.4th 1317 (11th Cir. Mar. 9, 2023) ............................... 21, 22, 23, 24

*NE Patients Group v. United Cannabis Patients and Caregivers of Maine*,
45 F.4th 542 (1st Cir. 2022) ...........................................................11

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
142 U.S. 2111 (2022) ..................................................................... passim

*Planned Parenthood of Central Missouri v. Danforth*,
428 U.S. 52 (1976) .........................................................................13

*Range v. Attorney General*,
53 F.4th 262 (3d Cir. 2022) .................................................. 12, 13, 19

*Standing Akimbo, LLC v. U.S.*,
141 U.S. 2236 (2021) ........................................................... 11, 12

*United States v. Beverly*,
No. 2:21-cr-36, (N.D. W. Va. Jan. 3, 2023) .................................3

*United States v. Black*,
2023 WL 122920 (W.D. La. Jan. 6, 2023) .................................3

ii

*United States v. Connelly*,
2022 WL 17829158 (W.D. Tex. Dec. 21, 2022) ............................................. 3, 6, 18

*United States v. Daniels*,
610 F.Supp.3d 892 (S.D. Miss. July 8, 2022) ............................................. 3

*United States v. Dugan,*
657 F.3d 998 (9th Cir. 2011) ............................................. 2

*United States v. Emerson*,
270 F.3d 203 (5th Cir. 2001) ............................................. 1

*United States v. Goins*,
2022 WL 17836677 (E.D. Ky. Dec. 21, 2022) ............................................. 6

*United States v. Harrison*,
2023 WL 1771138 (W.D. Ok. Feb. 3, 2023) ............................................. passim

*United States v. Jackson*,
2022 WL 3582504 (W.D. Ok. Aug. 19, 2022) ............................................. 5, 6

*United States v. Jimenez-Shilon*,
34 F.4th 1042 (11th Cir. 2022) ............................................. 6, 7

*United States v. Lewis*,
2023 WL 187582 (W.D. Ok. Jan. 13, 2023) ............................................. 3, 6

*United States v. Patterson*,
431 F.3d 832 (2005) ............................................. 1,2

*United States v. Posey*,
2023 WL 1869095 (N.D. Ind. Feb. 9, 2023) ............................................. 3

*United States v. Rahimi*,
61 F.4th 443 (5th Cir. 2023) ............................................. 1, 5, 6

*United States v. Randall*,
No. 4:22-CR-99, (S.D. Iowa Feb. 14, 2023) ............................................. 3

*United States v. Rozier*,
598 F.3d 768 (11th Cir. 2010) ............................................. 6

iii

*United States v. Seay*,
620 F.3d 919 (8th Cir. 2010) ...................................................................2

*United States v. Seiwert*,
2022 WL 4534605 (N.D. Ill. Sept. 28, 2022) ....................................3, 15

*United States v. Stennerson*,
2023 WL 2214351(D. Mont. Feb. 24, 2023). ..........................................3

*United States v. Veasley*,
No. 4:20-cr-209, (S.D. Iowa Sept. 22, 2022) ..........................................3

*United States v. Yancey*,
621 F.3d 681 (7th Cir. 2010) ............................................................3, 14

*Wilson v. Lynch*,
835 F.3d 1083 (9th Cir. 2016) ...............................................................16

**Statutes**

18 U.S.C. § 922(d) ...................................................................................18

18 U.S.C. § 922(g) ...............................................................................2, 18

21 U.S.C. § 844(a) .....................................................................................9

Fla. Stat. § 322.34 (2)(a) ...........................................................................9

Fla. Stat. § 322.34 (2)(c) ...........................................................................9

Fla Stat. § 893.13(6)................................................................................19

**Other Authorities**

Carlton F.W. Larson, *Four Exceptions in Search of A Theory: District of Columbia v. Heller and Judicial Ipse Dixit,* 60 HASTINGS L.J. 1371 (2009).......................17

Ch. 1501, 5 Colonial Laws of New York 244-46 (1894) ........................18

iv

Richard Moran, *The Origin of Insanity As A Special Verdict: The Trial for Treason of James Hadfield,* 19 Law & Soc'y Rev. 487 (1985) .........................................17

**Regulations**

27 C.F.R. § 478.11(1968) ...............................................................................1

OMB No. 1140-0020 .....................................................................................1

**Constitutional Provisions**

United States Constitution, Second Amendment........................................... passim

## ARGUMENT

## I.    THE ORDER OF DISMISSAL SHOULD BE REVERSED.

In support of the Order of Dismissal (Doc. 21; "Order"), the Appellees contend there has been a wave of decisions upholding the Challenged Laws[1] in the face of similar challenges. *See* D. Br., p. 17-18. As part of that, the Appellees imply that three circuit courts have reached decisions which support the Appellees' position in this matter and are based on the history and tradition of the Second Amendment. *Id.* Those are said to be the Fifth Circuit, Eighth Circuit, and Ninth Circuit. *Id.*

However, none of those circuit court decisions comport with the historical test that *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 U.S. 2111 (2022) requires. *United States v. Patterson* concluded, pre- *Bruen* and *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), that firearms regulations relating to illegal drug users were constitutional because such users "pose a risk to society if permitted to bear arms." 431 F.3d 832, 836 (5th Cir. 2005). This was based on that court's prior reasoning in *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001). However, in *United States v. Rahimi*, the Fifth Circuit concluded that *Bruen* rendered *Emerson* "obsolete," due to that opinion's reliance upon the now-defunct "means-end

---

[1] As used below and in the opening brief, "Challenged Laws" shall continue to refer collectively to sections 922(d)(3) and 922(g)(3) of the Federal Criminal Code, 27 C.F.R. § 478.11, and Form OMB No. 1140-0020.

scrutiny" test. 61 F.4th 443, 450-451 (5th Cir. 2023). Accordingly, neither *Emerson* nor *Patterson* remain representative of the Fifth Circuit's Second Amendment analysis.

*United States v. Seay* upheld section 922(g)(3) because it had the "same historical pedigree as other portions of § 922(g)." 620 F.3d 919, 925 (8th Cir. 2010). However, section 922(g) dates back only to 1968. *Id.* This is either roughly 100 or 200 years too late to be relevant, pursuant to *Bruen*'s historical test. 142 U.S. at 2120 (noting that laws which "long predate[ ] or postdate[ ]" 1791 or 1868 "may not illuminate the scope of the right.") *United States v. Dugan* also did not engage in any analysis of laws or regulations from the relevant time period, as it instead focused on the "danger" of allowing drug users to possess firearms. 657 F.3d 998, 999 (9th Cir. 2011). Accordingly, none of these cases shed light on the analysis before the Court.

The post-*Bruen* district court opinions the Appellees rely upon [D. Br., p. 18, n. 4] also should not impact the Court's analysis. All of those cases relate to fully illicit drug use, not the state law-compliant use of medical marijuana subject to this as-applied challenge. Also, many of them rely on analogies to felons, the mentally ill, or domestic abusers that (as argued below and otherwise in this matter) are not

distinctly or relevantly similar to the Appellants.[2] Others were based on binding precedent in their specific circuit.[3]

Further, several such cases rest upon the historical citations in *United States v. Yancey*, 621 F.3d 681 (7th Cir. 2010).[4] As noted previously, *Yancey*'s analysis in that area discussed only the government's general ability to regulate firearm possession and use, not any regulations that were distinctly or relevantly similar to the Challenged Laws. *See* P. Br., p. 28. Its holding was also based on an intermediate scrutiny analysis. *See* Doc. 15, p. 17-18. At least one district court from within the Seventh Circuit has expressly recognized this. *United States v. Seiwert*, 2022 WL 4534605 at *1-2 (N.D. Ill. Sept. 28, 2022) (noting that "the Supreme Court recently rejected" the "means-end standard" utilized in *Yancey*). Therefore, the Court paints on an essentially fresh canvas in deciding the unique and significant constitutional question at hand.

---

[2] *See United States v. Black*, 2023 WL 122920, at *3 (W.D. La. Jan. 6, 2023); *United States v. Beverly*, No. 2:21-cr-36, slip op. at *3 (N.D. W. Va. Jan. 3, 2023); *United States v. Lewis*, 2023 WL 187582, at *9, 10-11 (W.D. Okla. Jan. 13, 2023); *United States v. Randall*, No. 4:22-CR-99, slip op. at *3, 6 (S.D. Iowa Feb. 14, 2023).

[3] *See United States v. Connelly*, 2022 WL 17829158 (W.D. Tex. Dec. 21, 2022); *United States v. Stennerson*, 2023 WL 2214351, at *2 (D. Mont. Feb. 24, 2023).

[4] *United States v. Daniels*, 610 F.Supp.3d 892, 897 (S.D. Miss. July 8, 2022); *United States v. Posey*, 2023 WL 1869095, at *8 (N.D. Ind. Feb. 9, 2023); *United States v. Veasley*, No. 4:20-cr-209, slip op. at *4 (S.D. Iowa Sept. 22, 2022).

## A.    The Appellants are within "the people" the Second Amendment protects

The Second Amendment to the United States Constitution states, in part, that the "right of the people to keep and bear Arms, shall not be infringed." The purpose of the Second Amendment is to "codif[y] a pre-existing right" to bear arms that belongs to individuals and not the government. *Heller*, 554 U.S. at 592. As such, "the people," as used within it, "unambiguously refers to all members of the political community, not an unspecified subset." *Id.* at 580. Courts must, therefore, interpret the Second Amendment "with a strong presumption that [it] is exercised individually and belongs to all Americans." *Id.* at 581.

In the Order, the District Court "assume[d]" that the Appellants in this matter are "included in 'the people' the Second Amendment protects" and then proceeded with *Bruen*'s required historical analysis. *Id.*, p. 11. Following from that, the Appellants focused their opening brief on the historical analogues the District Court relied upon in concluding that the Challenged Laws are constitutional.[5] The Appellees, however, argue [D. Br., p. 11-15] that the District Court's assumption was incorrect. This is because they interpret *Heller* and *Bruen* as holding that only

---

[5] Further, for the reasons discussed in this section, the Appellants contend that who constitutes a "responsible, law-abiding citizen" is most appropriately considered as part of the history and tradition analysis *Bruen* mandates. This is how that matter was largely discussed in the Order and the Appellants' opening brief. *See* Doc. 21, p. 9-16; P. Br., p. 13, 20-21, 32-38.

4

"law-abiding, responsible citizens" have Second Amendment rights. *See Bruen*, 142 U.S. at 2131 *citing Heller*, 554 U.S. at 635. From there, they contend that Appellants Vera Cooper and Nicole Hansell are not "law-abiding," and are accordingly not part of "the people," due to their marijuana use.

*Rahimi* recently concluded that the Appellees' interpretation of "the people" in this area does not comport with *Bruen* and *Heller*, but instead "runs headlong" into them. 61 F.4th at 451-452. The Appellees' argument that non-law-abiding citizens have no Second Amendment protections seeks to "identify the scope of the right," but the Fifth Circuit found that *Heller* and *Bruen*'s discussion of such citizens instead served to "identify the scope of the legislature's power to take" that right away. *Id. citing Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J. dissenting) *aborgated by Bruen*. According to the Appellees' position, individuals would be "in [the Second Amendment's scope] one day and out the next." *Id.* Instead, the Fifth Circuit held that the proper consideration is not whether state law-compliant marijuana use takes an individual out of "the people," but whether it permits such people to be disarmed. This takes the Court directly to the history and tradition analysis that the Appellants have focused on.

Beyond *Rahimi*, multiple federal courts and judges post-*Bruen* have scoffed at the idea that committing any illegal act is a sufficient basis to make an individual not part of "the people." *See United States v. Jackson*, 2022 WL 3582504 at *2

(W.D. Ok. Aug. 19, 2022); *United States v. Harrison*, 2023 WL 1771138 at *4, n. 21 (W.D. Ok. Feb. 3, 2023); *United States v. Goins*, 2022 WL 17836677 at *4-7 (E.D. Ky. Dec. 21, 2022); *Connelly*, 2022 WL 17829158 at *3; *Lewis*, 2023 WL 187582 at *2 .

This Court's pre-*Bruen* precedent also adopts this reasoning. In *United States v. Jimenez-Shilon*, the Court undertook an extensive analysis of "who are 'the people' mentioned in the Second Amendment?" 34 F.4th 1042, 1044 (11th Cir. 2022). It noted, however, that "underlined even individuals who are indisputably part of 'the people,' such as dangerous felons and those suffering from mental illness," may be constitutionally prohibited from exercising that right. *Id.* at 1046 *citing Heller*, 554 U.S. at 626, 635 and *United States v. Rozier*, 598 F.3d 768, 770-771 (11th Cir. 2010) (emphasis added). This Court has also concluded that "felons do not forfeit their constitutional rights upon being convicted," but instead that status "substantially affects the level of protection those rights are accorded." *Rozier*, 598 F.3d at 771. As *Rahimi* and the other cited post-*Bruen* decisions show, this Court's previous determinations in this area comport with *Bruen* and reflect that any consideration of who is "law-abiding" should fall within the Court's historical analysis.

Adopting the Appellee's argument that Cooper and Hansell's state law-compliant medical marijuana use renders them outside "the people" would have wide-ranging and severe consequences. As an initial matter, that would mean that

such patients not only have no Second Amendment rights, but they also do not possess First or Fourth Amendment rights. That is because, as this Court has explained, "the people" is a term of art used in each of those sections of the Constitution. *Jimenez-Shilon*, 34 F.4th at 1044. There is no reason to believe that the meaning of that phrase varies "from one provision of the Bill of Rights to another." *Id.* at 1045; *see also Bruen* 142 U.S. at 2156 (deeming the Second Amendment to not be "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarentees.").

It is one thing to argue that such state law-compliant medical marijuana users' right to bear arms can be restricted due to historical precedent. It is another to conclude that the Bill of Rights essentially does not apply to Cooper and Hansell. There is no reasonable way to comport the latter position with the Second Amendment's individual nature or *Heller*'s strong presumption that all persons possess such core rights. For these reasons, the Court should conclude that the Appellants are within "the people" the Second Amendment protects and focus its time and attention on the historical support (or lack thereof) for the Challenged Laws.

7

**B.**    **The Appellees did not meet their burden of showing that disarming state law-compliant medical marijuana users comports with the history and tradition of the Second Amendment.**

**1.**    **State law-compliant medical marijuana users are not felons, felon-equivalents, or violent offenders, and the Appellees have shown no historical support for disarming misdemeanants.**

The Appellees contend that the Appellants have "fail[ed] to refute" the position that felons may be constitutionally disarmed. D. Br., p. 19. This is largely true, as the Appellants allow that a felony or felony-equivalent conviction could serve as a historical basis for disarmament.[6] *See* P. Br., p. 24-26. They did so because, as the Appellees concede [D. Br., p. 19], Cooper and Hansell are not felons. At worst, they have engaged in conduct that would be punishable as a misdemeanor.

The Appellees' attempt to blur the lines between a misdemeanor and felony offense is simply a non-starter. Felonies are "the most serious category of crime" because Congress has deemed their comission "to reflect 'grave misjudgment and maladjustment.'" *Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019) *citing Hamilton v. Pallozzi*, 848 F.3d 614, 626 (4th Cir. 2017). It is beyond dispute that neither Congress nor Florida have categorized or may punish Cooper and Hansell's

_____

[6] *Amici Curiae*, the Firearms Policy Coalition and FPC Action Foundation ("FPC") provide a detailed historical rebuttal of this position in its brief. [FPC Br., p. 31-34]. The Appellants do not seek to refute these citations, but also do not need to adopt them because of marijuana possession's classification as a misdemeanor. The Appellees do not address these arguments or citations (or any of FPC's other extensive and persuasive historical analysis) in their brief.

conduct in this way. Beyond that, Congress legally protects their state law-compliant medical marijuana use in an unprecedented and extraordinary manner. Accordingly, Cooper and Hansell are not equivalent or analogous to felons.

In stretching to argue otherwise, the Appellees make a startling and dangerous contention. They argue that, to the extent Cooper and Hansell have used marijuana multiple times, they are actually repeat offenders who have committed what is equivalent to felony offenses. D. Br., p. 19-20. However, as the laws the Appellees rely upon clearly show, it is a prior *conviction* for marijuana possession, not repeated use, which can render such an act a felony. *See* 21 U.S.C. § 844(a). Essentially, the Appellees invite the Court to categorize Cooper and Hansell as having been arrested, prosecuted, and convicted of a crime even if none of that has occurred. Beyond being completely anti-textual, this argument should be frightening to anyone concerned with basic due process and the protections of law.

As an illustrative example, in Florida, driving with a suspended or revoked driver's license is a second-degree misdemeanor. *See* § 322.34 (2)(a), Fla. Stat. However, upon a third or subsequent conviction for this crime, it is punishable as a third-degree felony. *See* § 322.34 (2)(c), Fla. Stat. According to the Appellees, if a Florida resident's driver's license is suspended and then they drive three or more times before curing that suspension, then they should be considered felons who may be disarmed regardless of whether they are ever arrested or prosecuted for this

9

driving offense. The Appellees know that the law does not operate this way, and it is unclear why they would imply otherwise to this Court.

The Appellees argue further that Cooper and Hansell are "comparable" to those who commit domestic violence. D. Br., p. 21. The Appellants directly addressed this issue in their opening brief [P. Br., p. 30-31], but the Appellees simply ignore the arguments and citations therein. Instead, they assert that domestic violence and marijuana possession, although dissimilar, are both "serious misdemeanors subject to substantial punishment." D. Br., p. 21.

The Appellees' argument in this area begs an obvious question: what misdemeanor offense would they not consider to be "serious" or carrying "substantial punishment?" Clearly, no reasonable person wishes to be incarcerated for any period of time. To an indigent party, a fine might also qualify as "substantial punishment." Beyond that, simply having any criminal conviction or citation on a person's record can lead to collateral consequences. To that end, the Appellees seek to create a slippery slope where any criminal offense, no matter how minor, can be deemed analagous to significantly more serious crimes. Such an outcome would not comport with precedent or common sense, and it would give the Appellees a "blank check" of the type *Bruen* expressly rejected. 142 U.S. at 2133.

> **2.    There is less historical support for disarming state law-compliant medical marijuana users than there would be for traditional misdemeanants.**

Placed in the proper context of *Bruen*'s required history and tradition analysis, Cooper and Hansell are not reasonably comparable to anyone historically considered non-law-abiding. *See* Doc. 15, p. 13-15. They have pled that they only participate in Florida's medical marijuana program because Congress has seen fit to permit and protect that action. Doc. 12, ⁋ 29, 32; *see also NE Patients Group v. United Cannabis Patients and Caregivers of Maine*, 45 F.4th 542, 553 (1st Cir. 2022) (noting that "Congress has taken affirmative steps" to prevent the Department of Justice from "shut[ting] down" state medical marijuana programs, and it has done so, "presumably, with an awareness of the beneficial consequences that those steps will have for consumers who seek to obtain medical marijuana."). As Supreme Court Justice Clarence Thomas has noted, Congress "simultaneously tolerates and forbids" medical marijuana use in an unprecedented manner. *Standing Akimbo, LLC v. U.S.,* 141 U.S. 2236, 2236-2237 (2021) (Thomas, C., respecting the denial of certiorari). This "bears little resemblance" to the previous "water tight nationwide prohibition" against marijuana use. *Id.* at 2238.

The Appellees seek to brush the Rohrabacher-Farr Amendment aside and effectively assign no meaning to this repeated act of Congress. D. Br., p. 36-42. They couch the Appellants' position as permitting that budget rider to effectively change

the meaning of the Second Amendment. D. Br., p. 41-42. Further, the Appellees contend that the Rohrabacher-Farr Amendment plays no part in the *Bruen* analysis at issue. D. Br., p. 40.

However, Congress' actions relating to medical marijuana are highly relevant to the consideration of "why" such users are disarmed in comparison to the Appellees' alleged historical analogues. *See Bruen*, 142 U.S. at 2132-2133. They ask the Court to deem relevantly similar two actions (state law-compliant medical marijuana use and the historical commission of any type of crime) despite a highly-relevant dissimilarity between them (Congress at least currently forbids punishment for the former, but has not ever done so in a similar way for the latter). The Appellees cannot cite and have not cited to any group of people who have been historically disarmed due to actions that Congress has categorized or treated in any way akin to state law-compliant medical marijuana use.

Whatever Congress' policy rationale for creating its "half-in, half-out"[7] marijuana policy, the Court should decline to simply ignore this substantial distinction in considering whether the Challenged Laws are "comparably justified" to historical criminal regulations. *Bruen*, 142 U.S. at 2118. Such use shows no disrespect for the rule of law that is analogous to a traditional crime. *See Range v. Attorney General,* 53 F.4th 262, 277 (3d Cir. 2022) (decision vacated, motion for

---

[7] *Standing Akimbo*, 141 U.S. at 2236-2237.

reconsideration en banc granted Jan. 6, 2023) ("…the replacement of individual judgments of what behavior is transgressive with communal norms is an essential characteristic of the social contract."). It is difficult to consider medical marijuana anything other than a communal norm when Congress has expressly allowed it to so widely proliferate throughout the country. This is, at least, a clear and relevant distinction from any regulations and analogies the Appellees cite relating to disarmament and criminality.

The Appellees correctly note that some individuals could historically be disarmed based on a status that does not carry criminal punishment. D. Br., p. 40-41. However, these groups are not distinctly or relevantly similar to state law-compliant medical marijuana users. Although the mentally ill cannot be arrested, they can be involuntarily civilly committed. *See Kansas v. Hendricks*, 521 U.S. 346, 357 (1997). Such mental illness is often immutable, and those who suffer from it to a significant level face restrictions upon their rights resulting from an inability to comport their behavior with societal standards. *Id.* As it relates to minors, the Supreme Court has "long recognized" that their actions and activities may be regulated beyond those of adults. *See Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 75 (1976). Further, as discussed previously in this matter and herein, laws restricting what a person can do while intoxicated by alcohol (such as driving or possessing/discharging a firearm) are not in question. However, persons

13

who consume alcohol have never historically been forbidden from owning firearms or automobiles due to a risk they might use them while under the influence. The reasoning behind or effect of each of these classifications and restrictions is in no way analogous to that of the Challenged Laws.

### 3. Historical regulations disarming those under the influence of a substance or addicts are not analogous to the Challenged Laws.

Through the Appellees' attempted analogy between state law-compliant medical marijuana users and the mentally ill, they contend that all such persons may be fully disarmed because they do not have the "care, caution, and self-control" required to possess firearms. D. Br. 20. Further, the Appellees assert that Cooper and Hansell are historically comparable to those "deemed lacking in reason," such as children and the insane D. Br., p. 22. They argue that this comparison fits "regardless of whether an individual's drug use is volitional or attributable to addiction."[8] D. Br., p. 33.

---

[8] This contention stands at odds with *Yancey*, which the Appellees have principally relied on in this matter. *Yancey n*oted an alleged similarity between drug users such as the defendant in that case (an illicit marijuana user who admitted to daily use for the past two years) and those considered mentally ill. 621 F.3d at 682, 685. It found that this comparison "makes particular sense" because of the similarities between those two groups. *Id.* at 685. This was specifically because "drug addiction is an illness not unlike other mental illnesses." *Id.* Accordingly, it is unclear how the Appellees can rely on *Yancey* in this area while simultaneously rejecting that court's reasoning for deeming marijuana users analogous to the mentally ill.

Beyond what is cited above, the Appellants have repeatedly noted that Cooper and Hansell are not distinctly or relevantly similar to the mentally ill. Unlike those with an inability to comport their behavior to the law, Cooper and Hansell have both deliberately considered federal and state law in deciding how to conduct themselves. Pl. Br., p. 42; *see also* Doc. 12, ¶¶ 29, 32. As pled, Cooper and Hansell would not participate in Florida's medical marijuana program but for the protections the Rohrabacher-Farr Amendment provides. *Id.* Further, they comply with the laws and regulations of that program. *Id.* Even if the Appellees disagree with Cooper and Hansell's decisions in this area, they cannot show any way in which this reasoning and conduct is analogous to that of a lunatic.

Another case the Appellees rely upon shows the type of drug user who could reasonably be classified as analogous to the mentally ill. In *Seiwert*, the defendant admitted to "years of addiction to heroin and crack." 2022 WL 4534605 at *2. Further, after being arrested, that defendant told law enforcement that he was a "functioning addict" and that he was "gonna be sick" if he did not consume any drugs in the near future. *Id.* at *1. Such an individual, who has lost the ability to rationally comport their behavior and instead is driven by a compulsion for drug use, may be reasonably compared to a lunatic. *See* P. Br., p. 39-40. Cooper and Hansell, however, show no similarities to such out-of-control persons.

Beyond that, simply deeming all state law-compliant medical marijuana users equivalent to the mentally ill is "a bridge too far."[9] *Harrison*, 2023 WL 1771138 at *18. As the Appellees noted below, "more than 700,000" Floridians participate in the state's medical marijuana program. Doc. 16, p. 13-14. The number of participants in Oklahoma's program was noted to be "likely nearly 400,000." *Harrison*, 2023 WL 1771138 at *18. These are only two of the dozens of states and territories which have permitted the medicinal use of marijuana. Nothing about this mere participation in a congressionally protected program "indicates that someone is in fact dangerous, let alone analogous to a 'dangerous lunatic.'" *Id.*

To the extent the Appellees' analogies in this area rely on the idea that state law-compliant medical marijuana users cannot exhibit sufficient self-control, this "argument appears to have no limit." *Id.* As *Harrison* noted, there are several classes of persons, such as those with autism or attention deficit disorder, who may often struggle with self-control. *Id.* However, it is inconceivable that any such group could be constitutionally disarmed for only that reason. Instead, the mentally-ill persons

---

[9] The Appellees' reliance upon *Wilson v. Lynch* makes its position on this issue even more broad and untenable. 835 F.3d 1083 (9th Cir. 2016); D. Br., p. 21. In that case, the plaintiff was a medical marijuana cardholder who, as pled, did not use marijuana. *Id.* at 1091. Instead, she joined that program as expressive speech to show solidarity with such users. *Id.* at 1091-1092. Despite this, the government contended that she could not buy or receive a firearm due purely to her status as a cardholder. *Id.* at 1091. Accordingly, pursuant to the Challenged Laws, Cooper and Hansell's attempted gun purchases would have been denied even if they stopped using marijuana but maintained their Florida qualified patient status.

who have been historically denied the right to possess firearms are those who were "dangerous to be permitted to go abroad." Carlton F.W. Larson, *Four Exceptions in Search of A Theory: District of Columbia v. Heller and Judicial Ipse Dixit,* 60 HASTINGS L.J. 1371, 1377 (2009); *see also* Richard Moran, *The Origin of Insanity As A Special Verdict: The Trial for Treason of James Hadfield,* 19 LAW & SOC'Y REV. 487 (1985) (citing Vagrancy Act of 1744, 17 Geo.2, c. 5.) (noting that justices of the peace in England could arrest "dangerous lunatics."). The Appellees cannot offer anything showing that Cooper and Hansell are analogous to this.

As it relates to intoxication, the Appellees' proposed historical analogues only bolster the Appellants' case. The Appellees all but concede that preventing intoxicated persons from harming others is a "general societal problem that has persisted since the 18th century." *Bruen*, 142 U.S. at 2131; D. Br., p. 22-24. In fact, their brief includes the following subheading: "the founders recognized that intoxicating substances render users unable to responsibly bear arms." D. Br., p. 22.

However, the Appellees cannot cite to a single historical regulation around 1791 or 1868 that is analogous to completely disarming a person based on his or her general use of an intoxicating substance. In *Harrison,* counsel for the United States conceded that they were not aware of "even a single" such historical law. 2023 WL 1771138 at *7. Instead, all of the regulations the Appellees rely upon related to only certain events, holidays, or locations. D. Br., p. 25-27. Beyond that, many of those

17

laws expressly permitted individuals to possess firearms at those times and places, as long as they did not discharge them. *Id.*

This inability to show a "distinctly similar historical regulation" to the Challenged Laws is "relevant evidence" of their invalidity. *Id.* at \*6 *citing Bruen*, 142 U.S. at 2131. The offered analogues "imposed a far narrower burden" than the Challenged Laws, and they "left ample room for the exercise of the core right to armed self-defense." *Id.* at \*7; *see also Connelly*, 2022 WL 17829158 at \*2 (upholding the validity of sections 922(d)(3) and (g)(3) based upon pre-*Bruen* Fifth Circuit precedent, but noting the defendant's arguments against them "appear persuasive"  and the "government's proposed founding-era analogues imposed a significantly lesser burden on Second Amendment rights" than those modern laws.)

*Heller* makes the weakness of the Appellees' historical arguments even clearer. One of the historical regulations that the Appellees rely upon in this area is a 1771 New York regulation that prohibited the discharge of firearms on or around New Year's Eve. *See* 5 Colonial Laws of New York 244-46 (1894); D. Br., p. 26-27. The *Heller* majority deemed it "inconceivable," though, "that this law would have been enforced against a person exercising his right to self-defense on New Year's Day against such drunken hooligans." 554 U.S. at 632. However, this outcome would be all but assured for Cooper and Hansell, whose state law-compliant medical marijuana use renders them legally prohibited from defending

18

themselves with a firearm under any circumstances. That these laws operate in a manner *Heller* viewed as "inconceivable" is even further evidence of their invalidity.

In summary, a New York resident in 1771 could bring a firearm to an alcohol-fueled New Year's Eve celebration, but they were not permitted to discharge it. Based on that and similar historical laws, the Appellees contend that state law-compliant medical marijuana users can never legally possess a firearm, no matter their location or state of mind. This strained analogy is equally illogical and ahistorical.

Likely realizing the lack of historical support for their position as applied to state law-compliant medical marijuana users, the Appellees attempt to lump such use in with more serious and dangerous substances such as cocaine, heroin, fentanyl, and methamphetamines. D. Br., p. 9, 10, 30, 36. They seemingly hope that potentially permitting such fully illicit drug users to possess or purchase firearms will dissuade the Court from siding with the Appellants. However, anti-*Bruen* policy considerations aside, Florida classifies the possession of those drugs as a felony. *See* § 893.13(6)(a) and (c), Fla. Stat.; *see also Range*, 53 F.4th at 266 (concluding that a state-law offense punishable by more than two-years imprisonment is a felony-equivalent offense for disarmament purposes). Accordingly, in Florida and other states with similar classifications, there is a basis for disarming the users of such substances (i.e., they are felons or felon-equivalents) that does not apply to Cooper

or Hansell. Further, Congress has given nothing close to the legal protection it has offered to state law-compliant medical marijuana patients to the users of such other drugs.

Accordingly, the Challenged Laws are not distinctly or relevantly similar to any historical regulation relating to intoxication. They do not impact Cooper and Hansell's Second Amendment rights in the same way (time, place, and manner restrictions) or for the same reason (specific concerns relating to current intoxication or places where intoxicated people congregate). In those ways, the Challenged Laws take a "sledgehammer" to Cooper and Hansell's right to bear arms, whereas historical regulations surrounding intoxication took only "a scalpel" to them. *Harrison*, 2023 WL 1771138 at *8.

The Appellees attempt to excuse these distinctions by noting that marijuana use is generally illegal whereas alcohol use was not. D. Br., p. 32. Accordingly, the Challenged Laws are allegedly "even less restrictive than historical intoxication restrictions…" *Id.* However, if the Challenged Laws are constitutional due simply to the intoxicating nature of marijuana, then its legality is of no import. A substance is intoxicating regardless of whether it is legal. Therefore, this argument is irrelevant.

To this end, the Appellees' position regarding historical intoxication could have significant implications for those who legally consume alcohol. The Appellees go to great lengths to note that some of the Founders abhorred "drunkards" and

others who became intoxicated. D. Br., p. 23-25. Following from that, the Appellees contend that history supports the disarmament of those who engage in "frequent intoxication" because it is "incompatible with public safety." D. Br., p. 33. Pursuant to this theory, a modern regulation could constitutionally disarm those who the government believes drink too often or too heavily, without any finding of addiction or loss of control. Instead, the government would simply be finding that such individuals make harmful, irresponsible decisions regarding alcohol.

Beyond having no limiting principle, this position is the antithesis of *Heller* and *Bruen*. As the Supreme Court has made clear, the Second Amendment right to bear arms is not some gift from the government to those it deems responsible or proper. Rather, it is an inherent and core individual right which the government may only restrict upon an appropriate historical showing. Nothing in *Bruen* or *Heller* granted the government the seemingly-endless discretion to judge citizens' character and lifestyles to decide which ones are virtuous enough to defend themselves. Nor does any other applicable precedent endorse anything resembling such an outcome.

A recent decision from this Court shows the type of historical analogues that could pass muster in this area. In *National Rifle Association v. Bondi*, the Court considered whether a state law precluding those under 21 years of age from purchasing a firearm comported with the history and tradition of the Second

Amendment. 61 F.4th 1317 (11th Cir. Mar. 9, 2023)[10]. In considering how this regulation burdened an 18-to-20-year old's right to bear arms, the Court noted that several historical laws in this area from what was deemed to be the relevant time period prevented persons in that age group from receiving firearms through any means. *Id.* at 1326. The modern law, however, permitted such persons to receive guns "through legal means other than purchasing." *Id.* In that way, the historical regulations imposed "a greater burden on the right to keep and bear arms" than the law being challenged. *Id.* Accordingly, the modern statute did not encumber that right in a manner that was out of step with history and tradition because it imposed less of a burden than laws from the relevant time period. In the present matter, however, it is the modern regulation that more severely burdens the Appellants' Second Amendment rights.

The historical regulations relied upon in *Bondi* are far more distinctly or relevantly similar than anything the Appellees have cited. In that case, the Court was able to identify "a total of at least twenty jurisdictions" that banned the sale of firearms to 18-to-20-year-olds. *Id.* at 1327. It did not have to strain to analogize persons in that age group to lunatics. Instead, the *Bruen* analysis revealed that historical regulations sought to prevent armed violence in a distinctly or relevantly

---

[10] A judge of this Court has withheld the issuance of a mandate in that matter. *See* Case No. 21-12314, Doc. No. 67. A motion for rehearing en banc has been filed. *Id.*, Doc. No. 68-1.

similar matter to the law at issue (specifically, restricting how persons who have not yet reached a certain age could obtain firearms). The historical record in *Bondi* shows how tenuous the Appellees' attempted analogies are in this matter.

Even when couched as historical analysis, the Appellees' position in this matter often revolves around the type of policy reasoning and citations that *Bruen* expressly prohibited. The Appellees argue that marijuana affects a person's ability to think and reason, therefore permitting legislatures to disarm users. D. Br., p. 15-16, 20-21, 34, 36-37, 39-40. However, the Supreme Court has "expressly rejected" any "judge empowering, 'interest-balancing' inquiry" permitting courts to consider the policy value of challenged Second Amendment restrictions. *Bruen*, 142 U.S. at 2129 *citing Heller*, 554 U.S. at 634. Thus, the question before the Court is not whether the Challenged Laws are good or reasonable policy, but whether they are distinctly or relevantly similar to pertinent, historical regulations.

The Appellees seemingly imply that, by instructing courts to consider "how" and "why" modern and historical gun regulations impacted Second Amendment rights, the Supreme Court permitted the very policy reasoning it expressly prohibited. *See* D. Br., p. 31 This is clearly incorrect. In fact, to prevent courts from engaging in this form of back-door policymaking, *Bruen* specifically noted that these considerations did not permit "independent means-end scrutiny under the guise of analogical reasoning." 142 U.S. at 2133, n. 7. Accordingly, broad considerations of

who is dangerous and what will enhance public safety, outside of the required historical analysis, does not comport with *Bruen*.

### 4. The Appellees' new proposed historical analogues are unavailing.

The Appellees offered, for the first time, two new proposed analogues for the Challenged Laws in their answer brief. One is to historical militia laws. D. Br., p. 27-28. The other is to historical and modern "shall issue" regimes relating to permits for the concealed or public carry of firearms. D. Br., p. 16-17.

The Appellees' arguments and citations regarding historical militia laws are of no significance. As this Court recently held, the Second Amendment is "unconnected" with militia service. *Bondi*, 2023 WL 2484818 at *12 *citing Heller*, 554 U.S. at 605. The latter is a "legal obligation," whereas the former is a "right." *Id.* Even if Cooper and Hansell's state law-compliant medical marijuana use can preclude them from military service, this has no bearing on their ability to personally exercise their core right to bear arms.

The Appellees' focus on "shall issue" public carry permits also does not advance their position. First, there is no indication that *Bruen* placed a "constitutional stamp of approval on all aspects of every modern shall-issue regime." *Harrison*, 2023 WL 1771138 at *24. Second, both *Bruen* and *Heller* make clear that an essential promise of the Second Amendment is that individuals will be able to use firearms "for self-defense in the home." 142 U.S. at 2128 *citing* 554 U.S. at 629.

24

Even if the Appellees could hypothetically limit state law-compliant medical marijuana users' ability to publicly carry firearms, the Challenged Laws go far beyond that. As stated previously, they restrict a person's core and basic right to possess a firearm even in their own home. This is a far greater burden than anything imposed by any modern or historical concealed carry permit application process.

### C.    The District Court did not construe all well-pled allegations in the Amended Complaint in the light most favorable to the Appellants.

The Appellees' only argument in this area is that the pleadings make clear Cooper and Hansell are "habitual" users of marijuana. D. Br., p. 43. The Appellants have pled that Cooper and Hansell use medical marijuana pursuant to Florida's state laws and regulations. Doc. No. 12, ⁋ 29, 32. If the Court determines that the term "habitual," as used in the Order, means or implies nothing more than regular or normal use, then it need not address this issue further.

However, the Appellants interpret the Order as concluding that Cooper and Hansell's use of marijuana has reached a point where they are analogous to the mentally ill or addicts. Doc. No. 21, p. 18. If the Court interprets this as a finding of such frequent use that Cooper and Hansell have lost control over marijuana or that they can otherwise not reasonably function in society, then any such finding goes well beyond the pleadings in this matter. To the extent such a finding is necessary to place those individuals within a class that has been historically disarmed, the Appellees would need to offer some evidence to that effect.

25

## CONCLUSION

Wherefore, the Appellants respectfully request that the Order be reversed and that this matter be remanded to the District Court for further proceedings consistent with this Court's judgment.

Respectfully submitted,

/s/ William D. Hall
William D. Hall
Florida Bar No. 67936
Jordane Wong
Florida Bar No. 1030907
**DEAN, MEAD & DUNBAR**
106 E. College Ave., Suite 1200
Tallahassee, Florida 32301
Tel: (850) 999-4100
Fax: (850) 577-0095
whall@deanmead.com
jwong@deanmead.com
kthompson@deanmead.com
*Attorneys for Plaintiffs-Appellants*

26

**CERTIFICATE OF COMPLIANCE**

1.     This document complies with the word limit of Fed. R. App. P27(d)(2)(A) because this document contains 6266 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) as the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Time Romans 14 point font.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 5, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ William D. Hall
William D. Hall, Esquire