NO. 22-13893

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

VERA COOPER,
NICOLE HANSELL,
NEILL FRANKLIN,

*Plaintiffs–Appellants,*

v.

ATTORNEY GENERAL OF THE UNITED STATES,
UNITED STATES OF AMERICA,
DIRECTOR OF BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,

*Defendants – Appellees.*
_____/

On Appeal from the United States District Court
for the Northern District of Florida
Case No. 4:22-cv-00164-AW-MAF

## APPELLANTS' SUPPLEMENTAL BRIEF

William Dean Hall, III
Jones Walker LLP
106 East College Avenue, Ste. 1200
Tallahassee, Florida 32301
850-214-5100
*Counsel for Appellants*

Adam J. Komisar
Komisar Spicola, P.A.
101 North Gadsden Street
Tallahassee, FL 32301
850-328-4447
*Counsel for Appellant*
  *Nicole Hansell*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellants, Vera Cooper, Nicole Hansell and Neill Franklin, through their undersigned counsel, pursuant to 11th Cir. R. 26.1-1, hereby certify that the following persons or entities have an interest in the outcome of this case:

Boynton, Brian – Trial Counsel for Defendants/Appellees; Principal Deputy Assistant Attorney General.

Butler, Steven – Counsel for Defendants/Appellees.

Caminez & Yeary, P.A. – Counsel for Plaintiff/Appellant Franklin.

Cooper, Vera – Plaintiff/Appellant.

Dean, Mead, Egerton, Bloodworth, Capouano & Bozart, P.A. – Former Counsel for Plaintiffs/Appellants.

Firearms Policy Coalition – Amicus Curie.

FPC Action Foundation – Amicus Curie.

Greenlee, Joseph – Counsel for Amicus Curie, Firearms Policy Coalition and FPC Action Foundation.

Jones Walker LLP – Counsel for Plaintiffs/Appellants.

Dettelbach, Steven – Defendant/Appellee, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives.

Farby, Leslie - Trial Counsel for Defendants/Appellees; Assistant Branch Director for the United States Department of Justice.

Franklin, Neill – Plaintiff/Appellant.

Fried, Nicole – Former Plaintiff/Appellant, in her official capacity.

Garland, Merrick – Defendant/Appellee, in his official capacity; Attorney General of the United States.

Hall, William – Counsel for Plaintiffs/Appellants.

Hansell, Nicole – Plaintiff/Appellant.

Hazel, Steven – Counsel for Defendants/Appellees; United States Department of Justice.

King/Morse, PLLC – Counsel for Amicus Curie, National Organization for the Reform of Marijuana Laws.

Komisar, Adam – Counsel for Plaintiff/Appellant Hansell.

Komisar Spicola, P.A. – Counsel for Plaintiff/Appellant Hansell.

Morse, Gregory – Counsel for Amicus Curie, National Organization for the Reform of Marijuana Laws.

Newman, Jeremy – Trial Counsel for Defendants/Appellees.

National Organization for the Reform of Marijuana Laws – Amicus Curie.

Raab, Michael S. – Counsel for Defendants/Appellees.

Restaino, Gary – Former Defendant/Appellee, in his previous official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives.

Russell, Daniel – Counsel for Plaintiffs/Appellants.

Simpson, Wilton – Former Plaintiff/Appellant, in his official capacity.

Stern, Mark B. – Counsel for Defendants/Appellees.

Winsor, Hon. Allen – United States District Judge.

Wright, Abby – Counsel for Defendants/Appellees; Assistant Director, United States Department of Justice Civil Division, Appellate Staff.

Yeary, Ryan – Counsel for Plaintiff/Appellant Franklin.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...............................................................C-1

TABLE OF CONTENTS........................................................................... i

TABLE OF AUTHORITIES ................................................................... ii

ARGUMENT ...........................................................................................1

  I. THE ORDER OF DISMISSAL SHOULD BE REVERSED. ...........................1

  A. *Rahimi* establishes that the Appellants are amongst "the people" with Second Amendment rights. ................................................................2

  B. *Rahimi* establishes that the Appellees have not met their burden of showing that disarming state law-compliant medical marijuana users comports with the history and tradition of the Second Amendment.................................................6

    1. There is no historical tradition of disarming persons relevantly similar to the Appellants. ...................................................................................7

    2. *Rahimi* precludes any argument that the Appellants may be disarmed because they are not "responsible."...................................................15

CONCLUSION.....................................................................................17

CERTIFICATE OF COMPLIANCE......................................................18

CERTIFICATE OF SERVICE .............................................................18

# TABLE OF AUTHORITIES

**Cases**

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ..................................... *passim*

*N.E. Patients Group v. United Cannabis Patients and Caregivers of Maine*, 45 F.4th 542 (1st Cir. 2022)......................................................................................11

*New York Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) . *passim*

*Standing Akimbo, LLC v. United States*, 141 S. Ct. 2236 (2021).................... 10, 14

*United States v. Alston*, 2023 U.S. Dist. LEXIS 128679, *31-34 (E.D. N.C. July 18, 2023) *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 190306 (E.D. N.C. Oct. 24, 2023) *stay granted*, 2024 U.S. App. Lexis 10624 (4th Cir. May 1, 2024)........................................................................................................10

*United States v. Bilodeau*, 24 F.4th 705 (1st Cir. 2022)...........................................4

*United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023) ............................................2

*United States v. Jimenez-Shilon*, 34 F.4th 1042 (11th Cir. 2022) ...........................5

*United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016)......................................4

*United States v. Rahimi,* 219 L. Ed. 2d 351 (2024)....................................... *passim*

*United States v. Thompson*, 842 F.3d 1002, 1007 (7th Cir. 2016) .........................11

*Wilson v. Lynch,* 835 F.3d 1083 (9th Cir. 2016)....................................................10

**Statutes**

18 U.S.C. § 922(d)(3)................................................................................................1

18 U.S.C. § 922(g)(3)................................................................................................1

**Regulations**

27 C.F.R. § 478.11(1968) ............................................................................1

Form OMB No. 1140-0020..........................................................................1

**Constitutional Provisions**

United States Constitution, Second Amendment........................................... *passim*

**Other Authorities**

Consolidated Appropriations Act 2024, Pub. L. No. 118-42, § 531 ............... *passim*

Press Release, Office of Public Affairs, Department of Justice, Justice Department Submits Proposed Regulation to Reschedule Marijuana (May 16, 2024)………… 5

Transcript of Oral Argument, *United States v. Rahimi* (22-915) .........................5, 8

# ARGUMENT

## I.    THE ORDER OF DISMISSAL SHOULD BE REVERSED.

Following the October 5, 2023 oral argument in this matter, the Court entered an order (Doc. 60-2) staying this case pending the United States Supreme Court's decision in *United States v. Rahimi*, Case No. 22-915. The Supreme Court issued its *Rahimi* opinion on June 21, 2024, and it revised that opinion on June 25, 2024. *See* 219 L. Ed. 2d 351 (2024). Amongst that opinion's core holdings is that "an individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 367. As argued below, the reasoning and conclusions in *Rahimi* support the Appellants' arguments for reversal of the Order of Dismissal (Doc. 29-21, "Order").

At the outset, it is important to note *Rahimi*'s focus on and repeated references to the nature of the facial challenge advanced in that case. The majority, as well as a concurring opinion, stressed that this is "the most difficult challenge to mount successfully." 219 L. Ed. 2d at 364 (internal citation omitted); *see also Id.* at 374 (Gorsuch, J., concurring). Accordingly, Rahimi had the burden of establishing that the challenged law was invalid in every possible circumstance. *Id.*

In contrast, the Appellants present the Court with an as-applied challenge to Sections 922(d)(3) and 922(g)(3) of the Federal Criminal Code, 27 C.F.R. § 478.11 and Form OMB No. 1140-0020 (collectively, the "Challenged Laws and

Regulations"). They only argue that the Challenged Laws and Regulations violate the Second Amendment to the United States Constitution as they are applied to those who use medical marijuana in compliance with their state laws. Doc. 29-12, ¶ 111, 114. The relief the Appellants seek is more narrow than even other pending as-applied challenges to laws relating to drug use and firearms. *See United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023) (petition granted, judgment vacated, and case remanded for further consideration in light of *Rahimi* on July 2, 2024) (challenging such laws as applied to a state and federally illegal user of marijuana). Instead, as the Supreme Court did in *Rahimi*, the Appellants seek only to "confirm what common sense suggests[1]:" that there is no historical tradition or principle of disarming persons like the Appellants who have not committed serious or violent crimes and who have not shown themselves to be a threat to the safety of others.

### A. *Rahimi* establishes that the Appellants are amongst "the people" with Second Amendment rights.

At the oral argument in this matter, the panel reasonably questioned which categories of persons fall within the Second Amendment's protections pursuant to *New York Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) and *District of Columbia v. Heller*, 554 U.S. 570 (2008). In those decisions, the Supreme Court stated that the Second Amendment aims to protect "the right of law-abiding,

---

[1] 219 L. Ed. 2d at 367.

responsible citizens to use arms." *Bruen*, 142 S. Ct. at 2131 *citing Heller*, 554 U.S. at 635. The panel questioned how and whether this language served to "filter" certain persons out of the Second Amendment's orbit, and it expressed a hope that the *Rahimi* opinion would clarify this point.

*Rahimi* shows that the Appellants are amongst "the people" with Second Amendment rights. The Supreme Court proceeded directly to its historical inquiry in that matter, giving no consideration to whether Rahimi (who had indisputably committed serious and violent criminal offenses) was "law-abiding." Further, near the end of the Court's opinion, it noted:

> Finally, in holding that Section 922(g)(8) is constitutional as applied to Rahimi, we reject the Government's contention that Rahimi may be disarmed simply because he is not "responsible." … "Responsible" is a vague term. It is unclear what such a rule would entail. Nor does such a line derive from our case law. In *Heller* and *Bruen*, we used the term "responsible" to describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right…But those decisions did not define the term and said nothing about the status of citizens who were not "responsible." The question was simply not presented.

> *Rahimi*, 219 L. Ed. 2d at 369-370.

In his dissent, Justice Thomas added that "not a single Member of the Court adopt[ed] the Government's theory" that only "responsible" and "law-abiding" persons possess Second Amendment rights. *Id.* at 416 (Thomas, J. dissenting); *see also Id.* at 377 (Gorsuch, J., concurring). Justice Thomas (who authored the *Bruen* majority opinion) added further that such language served only to "describe those

3

who were unable to publicly carry a firearm" pursuant to the challenged laws in *Bruen* and *Heller*. *Id.* at 416, n. 7.

The contrast between Rahimi and the Appellants further clarifies this point. The former was noted to have fired a gun at his romantic partner, was found by a court to have committed "family violence," later violated a resulting restraining order, and subsequently engaged in repeated and seemingly random acts of violence involving firearms. *Id.* at 360-361. The latter simply ingest marijuana in reliance upon their state's law, their doctor's recommendation, and Congress' express protection of such action. Doc. 29-12, ¶ 29, 32, and 80; *see also* Consolidated Appropriations Act 2024, Pub. L. No. 118-42, § 531 ("Rohrabacher-Farr Amendment").[2] There is no reasonable argument (be it historical or logical) in which Rahimi is law abiding or responsible and the Appellants are not. Yet, the Supreme Court did not declare Rahimi to be wholly excluded from the Second Amendment's protections.

Further, the Solicitor General of the United States effectively conceded in the *Rahimi* oral argument that the Appellants are not amongst any group of non "law-abiding persons" who are bereft of Second Amendment rights. She defined such

---

[2] *See also United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016) *and United States v. Bilodeau*, 24 F.4th 705 (1st Cir. 2022) (both concluding that the Rohrabacher-Farr Amendment at least currently precludes the Department of Justice from criminally prosecuting state-law compliant medical marijuana users). The Appellees do not contest these holdings. Doc. 29-33 at 16-17 (276-277 of Appendix).

persons as those who have "committed serious crimes defined by the felony-level punishment that can be attached" to them. Transcript of Oral Argument, *United States v. Rahimi* (22-915), 5-6. The Solicitor General later agreed that "misdemeanor or minor criminal conduct under state law" would not exclude a person from the Second Amendment's protections. *Id.* at 8. It is undisputed in this matter that the Appellants have not committed a felony or felony equivalent offense. Doc. 27 at 18. Accordingly, the Appellees appear to now agree that the Appellants are "law-abiding" for Second Amendment purposes.[3]

Therefore, nothing in *Rahimi*, *Bruen*, or *Heller* can be read as filtering any of the Appellants out of the Second Amendment's protections. They are each unquestionably "members of the political community." *Heller*, 554 U.S. at 579; *see also United States v. Jimenez-Shilon*, 34 F.4th 1042, 1044 (11th Cir. 2022) (discussing who is part of "the people" or "the national community" pursuant to *Heller*). The only pertinent question before the Court is whether the Appellees have

---

[3] The Appellees' previous arguments to this effect have further eroded since the oral argument in this matter. Specifically, the Attorney General of the United States submitted a notice of proposed rulemaking that could lead marijuana to be reclassified from a schedule I to a schedule III drug. *See* Press Release, Office of Public Affairs, Department of Justice, Justice Department Submits Proposed Regulation to Reschedule Marijuana (May 16, 2024), https://www.justice.gov/opa/pr/justice-department-submits-proposed-regulation-reschedule-marijuana. The concession that such action would be appropriate, regardless of the ultimate outcome of this administrative process, provides strong support for the Appellants' position in this matter.

met their burden of showing that there is a historical tradition of disarming persons who are relevantly similar to the Appellants.

### B. *Rahimi* establishes that the Appellees have not met their burden of showing that disarming state law-compliant medical marijuana users comports with the history and tradition of the Second Amendment.

In *Rahimi*, the Supreme Court clarified the purpose and scope of the required historical inquiry in Second Amendment challenges. Seeking to avoid a "law trapped in amber," the Supreme Court stated that the "appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 219 L. Ed. 2d at 363. The government bears the burden to "justify its regulation" in this manner. *Id*. In conducting this analysis, a court should evaluate whether such a regulation is "'relevantly similar' to laws that our tradition is understood to permit…" *Id.* "Why and how" a challenged law "burdens the right are central to this inquiry." *Id.* Even when "arms-bearing" for certain persons and populations was historically regulated, a modern law may be unconstitutional if it "does so to an extent beyond what was done at the founding." *Id.* at 364. Such historical laws need not be "dead ringer[s]" for or "twins" to modern regulations, though, so long as they are "analogous enough to pass constitutional muster." *Id.*

Although *Rahimi* noted that there was no historical law that was identical to the one challenged in that case, the modern regulation "fit neatly within the tradition"

6

that applicable historical laws "represent." *Id.* at 367. Specifically, both the modern and historical laws at issue in *Rahimi* "applie[d] to individuals found to threaten the physical safety of others" and "restrict[ed] gun use to mitigate demonstrated threats of physical violence." *Id*. Further, those laws were narrowly tailored in that they did not "broadly restrict arms use by the public generally." *Id.* The Supreme Court also deemed the Second Amendment burden those modern and historical laws imposed to be comparable, as they all applied "only once a court" found a person to present "a credible threat to the physical safety" of others. *Id.* at 368. It focused further on the temporary nature of the modern and historical disarmament, as it served only during the period of a restraining order. *Id.* Finally, the Court compared the potential punishments stemming from these laws, finding the modern "lesser restriction of temporary disarmament" permissible in comparison to the historical punishment of imprisonment. *Id.*

### 1. There is no historical tradition of disarming persons who are relevantly similar to the Appellants.

*Rahimi* makes clear that the Challenged Laws and Regulations violate the Second Amendment as applied to the Appellants. Unlike in *Rahimi*, there is no historical tradition or principle reflecting or suggesting that the anyone relevantly similar to the Appellants may be stripped of their right to bear arms. Appellants Vera Cooper and Nicole Hansell only participate in their state medical marijuana program because Congress has seen fit to protect such action through the Rohrabacher-Farr

7

Amendment. Doc. 29-12, ¶ 29, 32. Further, as pled, they are compliant with their state's medical marijuana laws and regulations, placing them within the Rohrabacher-Farr Amendment's protections. *Id.* Nothing about this is reasonably comparable to the outrageous displays of violence and repeated violations of legal orders at issue in *Rahimi*.

The "why" of the Challenged Laws and Regulations, as applied to the Appellants, fits no historical tradition because those laws do not seek to protect against any "demonstrated" threats or risks. *Rahimi*, 219 L. Ed. 2d at 367-368. The Appellants, as pled, have not engaged in any violence or "serious crimes."[4] They have not been and, pursuant to the Rohrabacher-Farr Amendment, currently cannot be prosecuted for their state-law compliant medical marijuana use. The Appellees advance no argument that the Appellants are likely to intentionally harm anyone with a firearm. Instead, the Challenged Laws and Regulations disarm the Appellants due to the potential risk that their medical marijuana use might at some point lead to sensory or cognitive impairments. Doc. 35 at 20-21. Such possible side effects, the Appellees suggest, "may" cause the Appellants to "store firearms in an unsafe way" or to "otherwise handle firearms carelessly." *Id.*

No historical law or tradition imposed this type of firearm prohibition based on such potential or perceived risks. As it relates to criminality, any historical fear

---

[4] *See* Transcript of Oral Argument, *United States v. Rahimi* (22-915), 5-6.

8

that non-violent misdemeanants might later commit more serious crimes did not lead to their disarmament. Further, concerns regarding drunkenness or any other form of intoxication never cost a person their right to bear arms. *See* Doc. 35 at 25-28; Doc. 42 at 17-19. Instead, historical laws imposed what were effectively time, place, and manner restrictions relating to intoxication and gun possession. *Id.* As "common sense suggests," historical laws disarmed persons during the discrete period in which the risk of firearm violence or misuse was present (i.e., when the person was intoxicated or during times/places of mass celebration/inebriation). *Id.* In short, there is no historical tradition of wholly disarming every person who violates a law or every person who ingests an intoxicating substance due to such hypothetical risks.

The Appellees may argue, as they have previously, that the Appellants' medical marijuana use renders them analogous to the mentally ill. *See* Doc. 35 at 20-21. Such an assumed affliction, the Appellees contend, renders the Appellants unable to exercise sufficient "care, caution, and self-control" with firearms. *Id.* Therefore, no "demonstrated" risk is necessary to disarm them.

However, this does not comport with the Amended Complaint, history, or common sense. As pled, the Appellants both follow the medical marijuana laws and regulations of their state and rely on Congress' protections in relation to their medical marijuana use. Doc. 29-12, ¶ 29, 32, and 80. The historical principle behind disarming persons considered mentally ill relates to their inability to reason or

9

comport their behavior with societal norms and rules. *See United States v. Alston*, 2023 U.S. Dist. LEXIS 128679, *31-34 (E.D. N.C. July 18, 2023) *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 190306 (E.D. N.C. Oct. 24, 2023) *stay granted*, 2024 U.S. App. Lexis 10624 (4th Cir. May 1, 2024) (providing a historical overview of laws regarding "lunatics" and the basis for such regulations). Far from showing an inability or unwillingness to follow the law, the Appellants decide their course of conduct based on their state and Congress' mandates and protections. The Appellees may disagree with their ultimate decisions, but this is rational thought and behavior. There is no reasonable basis or principle upon which the Appellants could be lumped in with "lunatics" who could be involuntarily civilly committed or otherwise deprived of their constitutional rights.

The scope of the Challenged Laws and Regulations, as applied to the Appellants, is far from narrow. Instead, they serve to wholly disarm every medical marijuana program participant in the United States. This includes even some persons who do not use or ingest medical marijuana. *See Wilson v. Lynch,* 835 F.3d 1083 (9th Cir. 2016). As Congress continues to protect medical marijuana, such programs have spread across the country. *See Standing Akimbo, LLC v. United States*, 141 S. Ct. 2236, 2237 (2021) (Thomas, J., respecting the denial of certiorari). In this way, Congress has acted "presumably, with an awareness of the beneficial consequences" the Rohrabacher-Farr Amendment "will have for consumers who seek to obtain

medical marijuana." *N.E. Patients Group v. United Cannabis Patients and Caregivers of Maine*, 45 F.4th 542 (1st Cir. 2022). Yet, the Challenged Laws and Regulations treat all such persons as equivalent to wholly illegal drugs users (including users of substances carrying felony-equivalent criminal consequences). This flouts not only any reasonable tradition, but also Congress' actions in protecting and encouraging medical marijuana programs.

Once again, the Appellants do not contest the Challenged Laws and Regulations on their face. They do not challenge those provisions as applied to any person (including a medical marijuana patient) who is actively intoxicated. The Appellants do not challenge their application to those who use marijuana without the protection of a state medical marijuana system and the Rohrabacher-Farr Amendment. The rampant gun violence associated with the illegal drug market could provide reason to separate wholly illegal drug users and firearms fitting within the type of historical tradition found in *Rahimi*. *See United States v. Thompson*, 842 F.3d 1002, 1007 (7th Cir. 2016) (referring to guns as "tools of the drug trade…") (internal citations omitted).  Further, the Appellants also do not challenge those laws as they are applied to anyone who is addicted to any controlled substance.

Instead, the Appellants seeks only narrow, common-sense relief. Any risk of firearm misuse they pose can be mitigated by prohibiting the possession of a firearm while they are under the influence of marijuana. Instead, the Challenged Laws and

Regulations disarm the Appellants at all times (including in their own homes) on the basis that they have ingested marijuana in recent days or weeks. The Appellees need not show a historical "twin"[5] for these laws, but there is no historical "cousin"[6] or even distant relative for such sweeping disarmament.

In this way, the burden ("how") that the Challenged Laws and Regulations place upon the Appellants also does not fit any historical tradition. The Appellees have not cited and cannot cite to a single historical regulation or the existence/suggestion of a historical tradition that would preclude (a) a non-violent misdemeanant or (b) someone who generally uses an intoxicating substance from ever possessing a firearm. Simply put, there is no principle of treating those who are sometimes intoxicated as if they are always intoxicated. If there were, then the core constitutional rights of any person who ever drinks alcohol, takes a prescription medication, or ingests certain over-the-counter medications sit on a razor's edge. Yet, this is precisely the effect of the Challenged Laws and Regulations.

Although the Appellees may emphasize the "temporary" nature of the Second Amendment burdens the Challenged Laws and Regulations impose, those laws are not comparable to the law in *Rahimi* on that point. In that case, the period of disarmament ran while the person was actually "subject to a restraining order."

---

[5] *Rahimi*, 219 L. Ed. 2d at 364.
[6] *Rahimi,* 219 L. Ed. 2d at 394 (Barrett, J., concurring).

*Rahimi*, 219 L. Ed. 2d at 359. For Rahimi specifically, that period was "one to two years after his release from prison." *Id.* at 368. The Appellees may argue the Appellants face a similarly temporary burden because they could regain their Second Amendment rights by simply ending their marijuana use.

However, even this "temporary" burden on the Appellants has no historical precedent. The Appellees have detailed the concerns many founders held regarding "drunkards" and the potential threats they posed. Doc. 35 at 23-25. Yet, they do not and cannot cite to any tradition of wholly disarming "drunkards" or any persons relevantly similar to them. Instead, the clear historical tradition in this area is to mitigate against firearm misuse by restricting their use or possession during periods in which a person is intoxicated or at some location or event expected to include heavy drinking. *Id.* at 25-28. Accordingly, even the temporary wholesale disarmament of the Appellants has no historical basis.

The historical laws and traditions relied upon in *Rahimi* make clear that the Appellants may not be constitutionally disarmed for their medical marijuana use. The Supreme Court noted that, even as the colonists sought to prevent certain gun regulations through the ratification of the Second Amendment and otherwise, "regulations targeting individuals who physically threatened others persisted." *Rahimi*, 219 L. Ed. 2d at 365. Among those were surety laws, which "authorized magistrates to require individuals suspected of future misbehavior to post a bond."

13

*Id.* at 365-366. Such misbehavior included "all forms of violence, including spousal abuse," as well as those who went "armed offensively." *Id.* at 366 (internal citations omitted). Further, affray laws served to prevent persons from "arming" themselves "to the Terror of the People." *Id.* at 367 (internal citation omitted). "Taken together," these regulations revealed a tradition of prohibiting those "found by a court to present a threat to others" from possessing firearms. *Id.*

No such tradition exists as it relates to the Appellants. As an initial matter, Congress' treatment of medical marijuana is itself completely ahistorical. The Appellees cannot cite an example of the federal government ever before "simultaneously tolerat[ing] and forbid[ing]" the same activity at the same time. *Standing Akimbo*, 141 S. Ct. at 2236-2237. Therefore, it is difficult to see how there can be any tradition concerning persons relevantly similar to the Appellants. Further, as stated previously, no form of historical law wholly disarmed non-violent misdemeanants or "drunkards." Even if the Appellants could be fairly compared to such persons, history does not reveal any concern for their handling of firearms when not intoxicated or at a place of frequent intoxication. Accordingly, *Rahimi* defeats the Appellees' historical argument in support of the Challenged Laws and Regulations as applied to the Appellants.

For these reasons, pursuant to *Rahimi*, the Challenged Laws and Regulations violate the Second Amendment as applied to the Appellants. The Appellees have not

met their burden of showing that any class of persons relevantly similar to the Appellants was historically disarmed. They also have not shown any tradition or principle that would support this application of the Challenged Laws and Regulations. Accordingly, the Court should reverse the Order of Dismissal.

## 2. *Rahimi* precludes any argument that the Appellants may be disarmed because they are not "responsible."

The Appellees have argued that historical laws served to disarm those who were deemed not "responsible" enough to wield their Second Amendment rights. Doc. 35 at 11-21. This included "drunkards," as discussed previously. *Id.* at 23-25. The Appellants, they assert, would fall into such a class.

However, as previously cited, *Rahimi* clearly and firmly rejected this position. 219 L. Ed. 2d at 369-370. *Rahimi* stated further that it was unclear what "responsible" would mean or include in this context. *Id.* In this way, allowing the government to disarm anyone it deems irresponsible would be to hand it the type of "blank check" that *Bruen* affirmatively disallowed. 597 U.S. at 30.

The Appellees may attempt to re-assert this argument in a different package, however, pointing to the following language from *Rahimi*:

> "While we do not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse, *see Heller*, 554 U.S., at 626…"

> *Rahimi*, 219 L. Ed. 2d at 368.

15

This section cites to the language in *Heller* referring to the disarmament of "felons," "the mentally ill," and other firearm restrictions. 554 U.S. at 626. The Appellees may cite this language and recast their "responsibility" arguments against the Appellants as instead relating to their "special danger of misuse."

However, this language does not save the Challenged Laws and Regulations, as applied to the Appellants. First, the Appellants would not fall within such categories of persons. They are not felons or felon equivalents. They are also not "mentally ill" or "lunatics," as historically understood. Second, nothing about the Appellants, as pled, presents a special danger of misuse. The Amended Complaint does not state or include any reference to any current or past violent or serious criminal behavior. To the extent their marijuana use is currently a federal misdemeanor, they only take such actions with Congress' protection and encouragement. This does not fit any historical understanding of dangerous or irrational behavior.

Further, as Justice Barrett appropriately cautioned, courts "must be careful" not to apply any historical principle "at such a high level of generality that it waters down" the Second Amendment right. *Rahimi*, 219 L. Ed. 2d at 395 (Barrett, J., concurring). Much like labeling them "irresponsible," concluding that the Appellants' use of medical marijuana renders them a "special danger" would risk painting many law-abiding members of the political community with the same broad

16

brush. It is unclear why those who drink alcohol, participate in state-sanctioned gambling activities, or take other action the federal government might disapprove of would not pose the same "special danger." If a legislature can strip the core constitutional rights of any person who engages in a behavior it deems dangerous or unsavory (regardless of whether that action would subject a person to criminal punishment), then it is unclear whose Second Amendment rights could not be taken. As the Supreme Court did in *Rahimi*, the Court should steer clear of such murky constitutional waters relating to virtue or personal judgment and instead limit its inquiry to one of historical traditions and principles.

## CONCLUSION

Wherefore, the Appellants respectfully request that the Order of Dismissal be reversed and that this matter be remanded to the District Court for further proceedings consistent with this Court's judgment.

Respectfully submitted,

/s/ William D. Hall
William D. Hall
Florida Bar No. 67936
**Jones Walker LLP**
106 E. College Ave., Suite 1200
Tallahassee, Florida 32301
Tel: (850) 214-5100
whall@joneswalker.com
katricethompson@joneswalker.com
*Attorneys for Plaintiffs-Appellants*

17

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the Court's February 14, 2024 order requiring supplemental briefing (Doc. 60-2) because it does not exceed twenty (20) pages in length.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) as the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Time Romans 14-point font.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 12, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ William D. Hall
William D. Hall, Esquire

18