No. 22-13893

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

VERA COOPER,
NICOLE HANSELL,
NEILL FRANKLIN,
PLAINTIFFS - APPELLANTS,

V.

ATTORNEY GENERAL OF THE UNITED STATES,
UNITED STATES OF AMERICA,
DIRECTOR OF BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,
DEFENDANTS - APPELLEES.

---

**SUPPLEMENTAL BRIEF OF AMICUS CURIAE
NATIONAL ORGANIZATION FOR THE REFORM OF
MARIJUANA LAWS (NORML) IN SUPPORT OF PETITIONERS**

---

Gregory J. Morse
(NORML Amicus Counsel of Record)
King | Morse, PLLC
2240 Palm Beach Lakes Blvd., Ste 300
West Palm beach, FL 33409
(561) 651-4145
greg@morselegal.com

Nikki Fried
(NORML Amicus Committee)
5307 Pimlico Drive
Tallahassee, Fl 32309
fried.nikki@gmail.com

Joseph A. Bondy
(Co-Chair, NORML Amicus Committee)
Law Offices of Joseph A. Bondy
1776 Broadway, Suite 2000
New York, New York 10019
(212) 219-3572
jab@josephabondy.com

*Attorneys for Amicus Curiae NORML*
*Supporting Plaintiffs-Appellants*
*Seeking Reversal of Lower Court Decision and Order*

# **TABLE OF CONTENTS**

|  | Page |
|---|---|
| DISCLOSURE STATEMENT | 1 |
| STATEMENT OF IDENTITY, INTEREST OF AMICUS CURIAE | 2 |
| INTRODUCTION | 3 |
| POINT ONE | |
| UNDER RAHIMI, 18 U.S.C. §§ 922(g)(3) & (d)(3) ARE UNCONSTITUTIONAL AS APPLIED TO APPELLANTS | 3 |
|    A. Rahimi and § 922(g)(8) | 3 |
|    B. The Appellants and §§ 922(g)(3) and (d)(3) | 5 |
|    C. There is no Valid Basis to Disarm Non-Violent Medical Cannabis Users | 6 |
|    D. Cannabis Use Alone is Insufficient to Proscribe Firearm Licensure | 8 |
| CONCLUSION | 12 |
| CERTIFICATE OF COMPLIANCE | 13 |
| CERTIFICATE OF SERVICE | 14 |

# TABLE OF AUTHORITIES

Page

***Cases***

District of Columbia v. Heller, 554 U.S. 570 (2008)        8, 9

New York State Rifle & Pistol Assn., Inc. v Bruen,
597 U.S. 1 (2022)        9

United States v. Rahimi, 219 L. Ed 2d 351 (June 21, 2024)        *Passim*

Fried v. Garland, 640 F. Supp.3d 1252 (N.D.Fl. 2022)        4

***Statutes***

18 U.S.C. § 922(d)(3)        *Passim*

18 U.S.C. § 922(g)(3)        *Passim*

18 U.S.C. § 922(g)(8)        *Passim*

***Rules***

Federal Rule of Appellate Procedure 29(a)(4)        1

Federal Rule of Appellate Procedure 29(a)(4)(E)        2

Federal Rule of Appellate Procedure 32        13

***Other Sources***

Health and Human Services Administration Rescheduling        11
Materials

https://www.dropbox.com/scl/fi/pw3rfs9gm6lg80ij9tja6/2023-01171-Supplemental-Release-1.pdf?rlkey=v5atj0tcnhxhnszyyzcwdcvvt&e=2&dl=0
(last accessed July 12, 2024)

Cannabis Use Statistics                                                                                     11

https://www.forbes.com/sites/dariosabaghi/2023/11/09/gallup-poll-reveals-70-record-support-for-marijuana-legalization/ (last accessed July 12, 2024)

https://www.cannabisbusinesstimes.com/news/percent-americans-cannabis-smoke-use-gallup-poll/ (last accessed July 12, 2024)

https://norml.org/blog/2023/08/22/federal-survey-one-in-five-older-adults-have-consumed-cannabis-in-the-past-year/ (last accessed July 12, 2024)

https://www.nbcnews.com/health/health-news/daily-marijuana-use-outpaces-daily-drinking-us-new-study-says-rcna153510 (last accessed July 12, 2024)

# **DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 29(a)(4), amicus curiae National Organization for the Reform of Marijuana Laws (hereinafter "NORML") is a non-profit corporation, which is not publicly held, does not issue stock, and has no parent corporation.

## STATEMENT OF IDENTITY, INTEREST OF AMICUS CURIAE

For the past 54 years, NORML's mission has been to move public opinion sufficiently to legalize the responsible use of marijuana by adults, and to serve as an advocate for consumers to assure they have access to high quality marijuana that is safe, convenient, and affordable.[1]

---

[1] In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), no counsel for a party authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than the amicus curiae, or its counsel, made a monetary contribution intended to fund its preparation or submission.

# INTRODUCTION

NORML files the instant Supplemental Amicus Brief pursuant to the Court's February 14, 2024 Order (ECF 60), which held this matter in abeyance pending the Supreme Court's decision in United States v. Rahimi, 219 L. Ed. 2d 351 (June 21, 2024), and directed the parties to file supplemental briefs limited to what effect, if any, Rahimi has on the instant case.[2]

# POINT ONE

### UNDER RAHIMI, 18 U.S.C. §§ 922(g)(3) & (d)(3) ARE UNCONSTITUTIONAL AS APPLIED TO APPELLANTS

A. Rahimi and § 922(g)(8)

In United States v. Rahimi, 219 L. Ed. 2d 351 (June 21, 2024), the Supreme Court rejected a facial challenge to 18 U.S.C. § 922(g)(8), which makes it unlawful for a person:

> **(8)** who is subject to a court order that—
>
> **(A)** was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>
> **(B)** restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other

---

[2] NORML has already filed an extensive amicus brief discussing the paucity of historical analogues for the disarming of cannabis users (ECF 47).

>
> conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>
> **(C) (i)** includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
>
> **(ii)** by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury;
>
> To ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The Court held that, when an individual has been found by a court to pose an actual credible threat to the physical safety of another under § 922(g)(8), they may be temporarily disarmed consistent with the Second Amendment. See Rahimi at 398.

Rahimi directly impacts upon the instant case, requiring that the lower court's Decision and Order of Dismissal, Fried v. Garland, 640 F. Supp. 3d 1252 (N.D.Fl. 2022) (dismissal on ground that cannabis remains federally illegal), be reversed and the Complaint seeking declaratory and injunctive relief based upon a Second Amendment challenge to 18 U.S.C. §§ 922(g)(3) and (d)(3), ATF Form 4473 and 27 C.F.R. § 478.11 be reinstated.

4

B. The Appellants and §§ 922(g)(3) and (d)(3)

The Appellants have brought as applied Second Amendment challenges to two different sections of the statute—§ 922(g)(3), which provides that it shall be unlawful for any person "who is an unlawful user of or addicted to any controlled substance…to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce," and § 922(d)(3), which provides that it shall be unlawful for any person "to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person… is an unlawful user of or addicted to any controlled substance."

The Appellants are three individuals from Florida. Two are registered medical cannabis patients who wish to obtain federal firearm licenses, and the third has a federal firearms license and would like to become a registered medical cannabis patient. None have a violent or criminal history or any sort. No court has ever found any of them to pose a credible threat to the physical safety of another. They, like the overwhelming majority of cannabis users—state-legal or not, pose no threat to anyone at all, and fall well outside the reach of Rahimi's holding that, when an individual has been found by a court to pose a credible threat to the

5

physical safety of another, they may be temporarily disarmed consistent with the Second Amendment and its historical analogues.

### C. There is no Valid Basis to Disarm Non-Violent Medical Cannabis Users

Rahimi instructs that, "Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." Id. at 369. Conversely, the absence of any evidence of a "credible threat to the physical safety of others" requires that Appellants' as applied Second Amendment challenge to § 922(g)(3) and § (d)(3) be granted.

In stark contrast with Rahimi, where the defendant had threatened to kill his girlfriend, a court had issued a domestic violence restraining order after conducting a hearing and rendering a finding that he presented a credible threat to her physical safety, and he thereafter engaged in multiple other shooting events resulting in execution of a search warrant and recovery of unlicensed firearms from his home, id. at 360-61, here there is no evidence that the Appellants pose any threat or danger to public safety at all. However, unlike the constitutional safeguards of a hearing and findings of fact that are required under § 922(g)(8), no judicial finding of a credible threat to the physical safety of others is required as a threshold step to disarming an individual for illegal drug use under either § 922(g)(3) or § (d)(3).

Rather than an actively violent person found to represent a threat to others' safety, the Appellants are simply two state-registered legal medical cannabis

6

patients who seek to possess firearm licenses and a firearms license holder who would like to treat with medical cannabis but fears losing her license. There is no historical analogue to categorically disarming non-violent cannabis users such as Appellants simply based upon their status as users—particularly where, as here, cannabis has been recommended for their medical use under state laws that have heretofore been protected against federal enforcement. Throughout our history, and as Rahimi makes clear, stripping an individual of their Second Amendment rights requires credible evidence of an actual physical threat to others. In the context of alcohol and drug use this has traditionally required evidence and a finding of actual intoxication resulting in a credible threat to the physical safety of others at the time of their being temporarily disarmed. And, when their intoxication had abated, the individual was allowed to resume possession.[3]

There is no evidence that the Appellants have ever misused a firearm to harm or menace others in the past, or that they have any intention to do so in the future. They have no record of violence, and there is no basis to conclude that they might suddenly become violent, even after having consumed medical cannabis. Therefore, the historical analogues for disarming an individual, as explained in Rahimi, have not been met:

---

[3] See generally, NORML (First) Amicus Brief (ECF 47, at pp. 4-5) (collecting cases).

> Taken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed.

Id. at 371. The impact of Rahimi's holding is plain: absent a "clear threat of physical violence to another" by a "threatening individual," disarming is not constitutionally permissible.

As noted above, Rahimi implicated a separate section of the statute, § 922(g)(8), which restricted gun use to reduce demonstrated threats of physical violence by people under actual domestic violence restraining orders. Thus, unlike §§ 922(g)(3) and (d)(3) and their application to any and all federally illegal drug use, including every state-legal and registered cannabis patient in the country, § 922(g)(8) applies only to a very small segment of our national community and does not broadly restrict arms use by the public generally. Furthermore, as the Court noted, "Section 922(g)(8) applies only once a court has found that the defendant "represents a credible threat to the physical safety" of another. §922(g)(8)(C)(i)." Id. at 359. There exists no such Constitutional guardrail in either § 922(g)(3) or § (d)(3).

D. Cannabis Use Alone is Insufficient to Proscribe Firearm Licensure

Although the Rahimi Court noted that "While we do not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger

8

of misuse," id. at 368, citing District of Columbia v. Heller, 554 U.S. 570, 626 (2008), the systemic disarming of cannabis users for fear they are a category of persons all of whom represent a "special danger of misuse" is unsupported by history, precedent, or the facts. There is no historical analogue or truthful grounds to blanket-label millions of non-violent, otherwise law-abiding, state-registered medical cannabis users as "special dangers" or "mentally ill", nor to analogize them to felons, in a thinly veiled effort to render their being disarmed "presumptively lawful." Heller, 554 U. S., at 626, 627, n. 26.

In Rahimi the Court found that § 922(g)(8)(C)(i) presumed, like the surety laws before it, that the Second Amendment right may only be burdened once a defendant has been found to pose a credible threat to the physical safety of others. In the present case, there is no judicial finding nor any evidence that could possibly support a finding that the Appellants' medical cannabis use poses a credible threat to the physical safety of anyone.

Finally, in holding § 922(g)(8) constitutional as applied to Rahimi, the Court explicitly rejected the Government's argument that Rahimi could be disarmed simply because he was not "responsible." Id. at 370. The Court found "responsible" to be "a vague term," that did not derive from its case law. As the Court pointed out, although in Heller, 554 U. S. at 635 and New York State Rifle & Pistol Assn., Inc. v Bruen, 597 U.S. 1, 70 (2022), it had used the term

9

"responsible" "to describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right," id. at 370, neither decision defined the term, and both were silent on the status of citizens who were purportedly not "responsible." Accordingly, there is no basis for the Government to argue that all medical cannabis users are "irresponsible," or that their patient status alone rendered them a sufficient threat to warrant disarming under the Second Amendment.

This simple truth is further borne out by the Department of Health and Human Services recent recommendation to reschedule botanical cannabis from Schedule I to Schedule III of the Controlled substances act, thereby acknowledging that cannabis had a regularly accepted medical use and a lower potential for abuse that had been asserted for decades, including up to the date of filing of the present case.[4]

Post-Rahimi, the mere use of state-legal medical cannabis—a non-violent federal misdemeanor identical to those that President Joe Biden has recently pardoned, prosecution of which is foreclosed by spendings appropriations bills, and federal rescheduling and legalization of which is imminent—cannot constitutionally foreclose firearms licensure. Just as with alcohol and firearms, a medical cannabis patient can properly be limited from using a firearm while

---

[4] See https://www.dropbox.com/scl/fi/pw3rfs9gm6lg80ij9tja6/2023-01171-Supplemental-Release-1.pdf?rlkey=v5atj0tcnhxhnszyyzcwdcvvt&e=2&dl=0 (last accessed July 12, 2024)

actually impaired, but not at all times simply because of their status as a patient. Rahimi makes clear that it is only when there is a judicial finding that a person represents a credible threat of physical danger to another individual that they may be prohibited from firearm possession consistent with the Second Amendment.

The Appellants are law-abiding. But for their state constitutional and statutory rights to consume medical cannabis, two would not. The third does not. These Appellants, just like millions of other medical cannabis consumers throughout our country who have sought to register as patients and openly receive medicine from state-licensed sources, are respectful of the rule of law.

Given that seventy percent of all Americans support cannabis legalization, over half of all American adults have at some point used cannabis, seventeen percent identify as cannabis smokers [5], twenty-six percent of those aged 18-34 reported smoking cannabis in 2023[6], one in five adults between the ages of fifty and sixty consume cannabis[7], and daily cannabis use has recently overtaken daily alcohol use in America[8], a continued systemic bar on firearm possession by

---

[5] See https://www.forbes.com/sites/dariosabaghi/2023/11/09/gallup-poll-reveals-70-record-support-for-marijuana-legalization/ (last accessed July 12, 2024).
[6] See, https://www.cannabisbusinesstimes.com/news/percent-americans-cannabis-smoke-use-gallup-poll/ (last accessed July 12, 2024).
[7] See https://norml.org/blog/2023/08/22/federal-survey-one-in-five-older-adults-have-consumed-cannabis-in-the-past-year/ (last accessed July 12, 2024).
[8] See https://www.nbcnews.com/health/health-news/daily-marijuana-use-outpaces-daily-drinking-us-new-study-says-rcna153510 (last accessed July 12, 2024).

cannabis users absent a scintilla of evidence or judicial finding that they are an actual credible threat to the physical safety of anyone serves only to violate the Second Amendment rights of more people than ever before in our nation's history.

## CONCLUSION

For the reasons set forth herein, the lower court's Decision and Order should be reversed, and the Complaint reinstated.

Respectfully submitted,

*Gregory J. Morse*
Gregory J. Morse, Esq.
(Counsel of Record,
NORML Amicus Committee)
King | Morse, PLLC
2240 Palm Beach Lakes Blvd., Ste 300
West Palm beach, FL 33409
(561) 651-4145
greg@morselegal.com

*Nikki Fried*
Nikki Fried, Esq.
(NORML Amicus Committee)
5307 Pimlico Drive
Tallahassee, Fl 32309
fried.nikki@gmail.com

*Joseph A. Bondy*
Joseph A. Bondy
(Co-Chair, NORML Amicus Committee)
Law Offices of Joseph A. Bondy
1776 Broadway, Suite 2000
New York, New York 10019
jab@josephabondy.com

12

## **CERTIFICATE OF COMPLIANCE**

### Type–Volume Certification

Undersigned counsel hereby certifies that the instant Supplemental Amicus Brief by NORML complies with the word count set forth in FRAP 32, excluding the parts exempted by FRAP 32(f). The total word count of the Amicus Brief is 2,452 words.

### Typeface and Type-Style Certification

Undersigned counsel further certifies that the attached Amicus Brief complies with typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

Dated:　　July 12, 2024
　　　　　West Palm Beach, Florida

*Gregory J. Morse*
Gregory J. Morse, Esq.
Counsel of Record
King | Morse, PLLC
2240 Palm Bch Lakes
Blvd., Suite 300
West Palm beach, FL 33409
(561) 651-4145
greg@morselegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 12, 2024, I electronically filed the foregoing Supplemental Amicus Brief with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*Gregory J. Morse*

Gregory J. Morse